# Exhibit A

State Court Documents

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO.: 2019-CP-10- |
| | ) | |
| Builders FirstSource - Southeast Group, LLC, | ) | |
| | ) | **SUMMONS** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Arch Specialty Insurance Company and Western World Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TO THE ABOVE NAMED DEFENDANTS:

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the said Complaint upon the subscriber at his office at 147 Wappoo Creek Drive, Suite 604, Charleston, South Carolina 29412 within thirty (30) days after the service hereof, exclusive of the day of such service; and if you fail to appear and defend by filing an Answer to the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

s/Keating L. Simons, III
S.C. Bar No. 5111
Simons & Dean
147 Wappoo Creek Drive, Suite 604
Charleston, SC 29412
843-762-9132
klsimons@simonsanddean.com

Attorney for Plaintiff

December 30, 2019
Charleston, South Carolina

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO.: 2019-CP-10- |
| | ) | |
| Builders FirstSource - Southeast Group, LLC, | ) | |
| | ) | **COMPLAINT** |
| Plaintiff, | ) | (Declaratory Judgment) |
| | ) | (Breach of Contract) |
| v. | ) | (Bad Faith) |
| | ) | (Jury Trial Demanded) |
| Arch Specialty Insurance Company and Western World Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Builders FirstSource - Southeast Group, LLC, (hereinafter "BFS") complaining of the Defendants herein, alleges as follows:

1. This is partially an action for declaratory relief pursuant to S.C. Code Ann. §§ 15-53-10 et seq.

2. In accordance with S.C. Code Ann. § 15-53-80, all of the parties herein are proper parties to this action in that each has or claims an interest that would be affected by the requested declaration.

3. Venue is appropriate in Charleston County, South Carolina, because the incidents at issue in the Underlying Action (defined herein) are alleged to have occurred in Charleston County, South Carolina.

4. BFS was at all times material hereto a duly organized and existing limited liability company doing business in Charleston County, South Carolina.

5. Upon information and belief, Defendant Arch Specialty Insurance Company ("Arch") is an insurance company and/or corporation organized or existing under the laws of the State of

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Nebraska and at all times relevant herein was authorized to and was doing business in Charleston County and the State of South Carolina.

6. Upon information and belief, Defendant Western World Insurance Company ("Western World") is an insurance company and/or corporation organized or existing under the laws of the State of New Jersey and at all times relevant herein was authorized to and was doing business in Charleston County and the State of South Carolina.

7. Arch issued an insurance policy to named insured Charleston Exteriors, LLC, number AGL0011184-00, with a policy period of 3/26/2014 to 3/26/2015, a copy of which is attached hereto as Exhibit A and incorporated herein by reference ("Arch Policy").

8. Western World issued insurance policies to named insured Hurley Services, LLC, numbers NPP1334835, NPP1354747, and NPP1379743, which were collectively effective 5/15/2012 to 5/15/2015 (collectively "Western World Policies"). A copy of the policy number NPP1379743 is attached hereto as Exhibit B and incorporated herein by reference.

9. BFS has been sued in a construction defect case styled *Six Fifty Six Owners Association, Inc., et al. v. Windsor South, LLC, et al.*, now pending in the Court of Common Pleas for Charleston County, South Carolina as case number 2016-CP-10-03455 (the "Underlying Action").

10. A copy of the operative complaint in the Underlying Action is attached hereto as Exhibit C and incorporated herein by reference for insurance coverage purposes only; BFS has denied and continues to deny any liability for the damages sought against it in the Underlying Action.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

11. The work attributed to BFS on which the alleged liability of BFS in the Underlying Action is premised was actually performed by BFS subcontractors, Charleston Exteriors, LLC and Hurley Services, LLC, the named insureds in the Arch Policy and Western World Policies, respectively.

12. BFS qualifies as an additional insured under the Arch Policy and under the Western World Policies with respect to the Underlying Action.

13. BFS timely notified Arch and Western World of the Underlying Action and requested that each provide defense and indemnity with respect thereto.

14. In response to the tender made by BFS to Arch, by letter dated June 29, 2018, Arch agreed to defend BFS but since that time has neither provided a defense nor reimbursed BFS for costs incurred by it in defending the Underlying Action.

15. In response to the tender made by BFS to Western World, by letter dated July 10, 2019, Western World acknowledged that BFS is an additional insured under one or more of the Western World Policies but wrongfully and in breach of its policy obligations denied any coverage to BFS and refused to provide a defense to BFS of the Underlying Action.

FOR A FIRST CAUSE OF ACTION
(Declaratory Judgment)

16. BFS repeats and incorporates by reference the preceding paragraphs.

17. Arch and Western World have wrongfully failed or refused to accept BFS' claims for defense and indemnity and/or have reserved their rights to deny the claims; neither has agreed to provide a full defense of BFS in the Underlying Action as required by their policies.

18. BFS has been required to retain counsel at its own expense to defend the claims against it in the underlying action and to prosecute indemnity claims against its subcontractors, Arch

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

and Western World named insureds, who actually provided the work and services at issue in the Underlying Action.

19.     BFS has also been required to retain the undersigned and is obligated to pay them a reasonable fee for their services.

20.     As an additional insured under the Arch Policy and the Western World Policies BFS is entitled to the recovery of attorneys' fees, costs and expenses incurred in the present declaratory judgment action and in defense of the Underlying Action from Arch and Western World, jointly and severally.

21.     BFS alleges, and asks that the Court find and declare, that

a.      That this Court has jurisdiction over the parties;

b.      That this Court has jurisdiction over the subject matter;

c.      That BFS is an additional insured under the Arch Policy and the Western World Policies by operation of an additional insured endorsement specifically naming BFS or a blanket additional insured endorsement;

d.      That Arch and Western World owed or owes a duty to defend BFS as an additional insured under their respective Policies from any and all claims asserted against BFS in the Underlying Action;

e.      That the Arch Policy and the Western World Policies were in full force and effect at all times relevant to the claims asserted by BFS herein;

f.      That the damages and/or claims referenced in the Underlying Action filed against BFS by any party therein represent covered losses under the Arch Policy and Western World Policies;

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

g. That the damages and/or claims alleged by BFS against Charleston Exteriors, LLC and Hurley Services, LLC in the Underlying Action represent covered losses under the Arch Policy and Western World Policies;

h. That no exclusions or other limitations of coverage contained in the Arch Policy or Western World Policies are applicable to the claims against BFS in the Underlying Action or to the claims made by BFS against Charleston Exteriors, LLC and Hurley Services, LLC in the Underlying Action;

i. That by failing to defend BFS in the Underlying Action Arch and Western World have waived and/or are estopped from asserting any coverage defenses against BFS with respect to their coverage for such damages as may be awarded against BFS in the Underlying Action;

j. That BFS is entitled to damages from Arch and Western World in the amount of any damages awarded against BFS in the Underlying Action;

k. That BFS is entitled to recovery of its defense attorneys' fees, costs and expenses BFS incurred in the defense of claims against it in the Underlying Action and in the prosecution of claims against Charleston Exteriors, LLC and Hurley Services, LLC;

l. That BFS is entitled to the recovery of its attorneys' fees, costs and expenses incurred and to be incurred in the prosecution of this action; and

m. That BFS is entitled to interest, both pre-judgment and post-judgment.

FOR A SECOND CAUSE OF ACTION
(Breach of Contract)

22. BFS repeats and incorporates by reference the preceding paragraphs.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

23. By agreeing to defend BFS in the Underlying Action but failing to do so, Arch has breached its contract to provide insurance to BFS as an additional insured.

24. By refusing BFS' tender of defense and indemnity in respect to the Underlying Action, Western World has breached its contracts to provide insurance to BFS as an additional insured.

25. Said breaches of contract by Arch and Western World have resulted in damage to BFS in the amount of attorneys' fees, costs and expenses, incurred in the Underlying Action and in this action.

FOR A THIRD CAUSE OF ACTION
(Bad Faith)

26. BFS repeats and incorporates by reference the preceding paragraphs.

27. Arch and Western World owed a duty to fully and properly investigate BFS' claims and to defend and indemnify BFS from the claims against it in the Underlying Action covered under their policies.

28. Arch and Western World owed a duty of good faith and fair dealing not only in the payment of BFS' claims arising out of the insurance contracts but also in the manner in which they were processed and handled.

29. Arch and Western World each breached its duty of good faith and fair dealing, duty to defend, and duty to indemnify its insured, BFS, under the Arch Policy and the Western World Policies, by unreasonably failing to comply with its acknowledged/accepted defense obligation timely, failing to defend BFS, failing to accept BFS's tender for defense and indemnity, by denying coverage, and/or by failing to pay defense fees and costs properly due and owing.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

30. The failure or refusal of Arch and Western World to properly investigate, defend, indemnify, negotiate, and participate in the settlement of the Underlying Action on BFS's behalf, or to take any actions to protect the interests of BFS, constitute bad faith towards BFS and proximately damaged BFS. Said conduct by Arch and Western World entitles BFS to an award of actual, consequential and punitive damages, together with an award of attorneys' fees.

WHEREFORE, Plaintiff demands trial by jury on all issues so triable, that this Court inquire into the matters above set forth, that it grant declaratory relief as to the rights of Plaintiff and the obligations of Defendants, that it award money damages to Plaintiff against Defendants, jointly and severally, for the damages described herein, including attorneys' fees, costs and expenses and interest, pre-judgment and post-judgment, and that it grant such other and further relief as this Court deems just and proper.

s/Keating L. Simons, III
S.C. Bar No. 5111
Simons & Dean
147 Wappoo Creek Drive, Suite 604
Charleston, SC 29412
843-762-9132
klsimons@simonsanddean.com

Attorney for Plaintiff

December 30, 2019
Charleston, South Carolina



**EXHIBIT A**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**ARCH SPECIALTY INSURANCE COMPANY**
(A Nebraska Corporation)

Home Office Address:
10909 Mill Valley Road, Suite 210
Omaha, NE 68154

Administrative Address:
One Liberty Plaza, 53rd Floor
New York, NY 10006
Tel: (800)-817-3252

# COMMON POLICY DECLARATIONS

**Policy Number:** AGL0011184-00
**Renewal Of:** NEW

**Named Insured:** Charleston Exteriors LLC
**Mailing Address:** 610 Black Oak Blvd.
Summerville, SC 29485

**Surplus Line Producer:** N-SURANCE OUTLETS-GA
**Mailing Address:** 1792 WOODSTOCK ROAD
ROSWELL, GA 30075

**Policy Period:** **From:** 03/26/2014 **To:** 03/26/2015 at 12:01 A.M., Standard Time at your mailing address shown above.

**Business Description:** Gutter and Siding Installation

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | **PREMIUM** |
|---|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ | 3,254.00 |
| SC - Inspection Fee | $ | 100.00 |
| SC - Municipal Tax | $ | 71.08 |
| SC - PolicyFee | $ | 200.00 |
| SC - Surplus Lines Tax | $ | 142.16 |
| TOTAL PAYABLE AT INCEPTION: | $ | 3,767.24 |

**This company has been approved by the director or his designee of the South Carolina Department of Insurance to write business in this State as an eligible surplus lines insurer, but it is not afforded guaranty fund protection.**

**#444993 Matthew T. Yaeger**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

| FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS): |
|---|
| SEE ATTACHED FORM 00 ML0012 00-SCHEDULE OF FORMS AND ENDORSEMENTS. |

| Countersigned: March 27th 2014 | By: |
|---|---|
| (Date) | (Authorized Representative) |

**THIS POLICY INCLUDING ALL ENDORSEMENTS ISSUED HEREIN SHALL CONSTITUTE THE CONTRACT BETWEEN THE COMPANY AND THE NAMED INSURED.**

Arch Specialty Insurance Company is licensed in the state of Nebraska only.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

NAMED INSURED: Charleston Exteriors LLC
MAILING ADDRESS: 610 Black Oak Blvd.
Summerville, SC 29485
POLICY PERIOD: FROM 03/26/2014 TO 03/26/2015 AT 12:01 A.M. TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**LIMITS OF INSURANCE**

| | | | |
|---|---|---|---|
| EACH OCCURRENCE LIMIT | $ | 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ | 100,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ | 10,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ | 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ | 2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ | 2,000,000 | |

**RETROACTIVE DATE (NONE)**

THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.

RETROACTIVE DATE: NONE
(ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES)

**DESCRIPTION OF BUSINESS**

FORM OF BUSINESS:

☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☐ TRUST

☐ LIMITED LIABILITY COMPANY ☒ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY)

☐ OTHER

BUSINESS DESCRIPTION: Gutter and Siding Installation

 © ISO Properties, Inc., 2000

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| **SEE ATTACHED FORM 06 AGL0129 00-SUPPLEMENTARY LOCATION, CLASSIFICATION AND PREMIUM SCHEDULE.** | |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| **LOCATION NUMBER** | **CLASSIFICATION** | **CODE NO.** | **PREMIUM BASE** | **RATE** | | **ADVANCE PREMIUM** | |
| | | | | **Prem/ Ops** | **Prod/Comp Ops** | **Prem/ Ops** | **Prod/Comp Ops** |
| **SEE ATTACHED FORM 06 AGL0129 00-SUPPLEMENTARY LOCATION, CLASSIFICATION AND PREMIUM SCHEDULE.** | | | | | | | |

| | | | |
|---|---|---|---|
| | ADDITIONAL PREMIUM | $ | |
| | TOTAL PREMIUM (SUBJECT TO AUDIT) | $ | 2,154 |
| PREMIUM SHOWN IS PAYABLE: | AT INCEPTION | $ | 3,254 |
| | AT EACH ANNIVERSARY | $ | |
| | (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PREMIUM IS PAID IN ANNUAL INSTALLMENTS) | | |

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| **SEE ATTACHED FORM 00 ML0012 00-SCHEDULE OF FORMS AND ENDORSEMENTS.** |

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

# SUPPLEMENTARY LOCATION, CLASSIFICATION AND PREMIUM SCHEDULE

| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| 1 | 610 Black Oak Blvd., Summerville, SC 29485 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| LOC. NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| 1 | Siding Installation | 98967 | 14,664 (P) | $ 13.223 | $ 51.292 | $ 194 | $ 752 |
| 1 | Door, Window or Assembled Millwork - installation - metal | 91746 | 31,314 (P) | $ 11.057 | $ 27.517 | $ 346 | $ 862 |
| * | BLANKET ADDITIONAL INSURED ENDORSEMENT (CONTRACTOR) | 00 AGL0100 00 | 1 (F) | $ 500.00 | | 500 | |
| * | PRIMARY AND NON CONTRIBUTING INSURANCE WHERE REQUIRED BY WRITTEN CONTRACT(S) ENDORSEMENT | 00 AGL0103 00 | 1 (F) | $ 250.00 | | 250 | |
| * | WAIVER OF SUBROGATION ENDORSEMENT | 00 AGL0106 00 | 1 (F) | $ 250.00 | | 250 | |

2:20-cv-00654-RMG Date Filed 02/06/20 Entry Number 1-1 Page 15 of 198

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

POLICY NUMBER: AGL0011184-00
ARCH SPECIALTY INSURANCE COMPANY

COMMERCIAL GENERAL LIABILITY
06 AGL0129 00 02 13

# SUPPLEMENTARY LOCATION, CLASSIFICATION AND PREMIUM SCHEDULE

| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
|---|---|
| 1 | 610 Black Oak Blvd., Summerville, SC 29485 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| LOC. NO. | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| * | ADDITIONAL INSURED OWNERS, LESSEES OR CONTRACTORS SCHEDULED PERSON OR ORGANIZATION | CG 20 10 | 1 (F) | $ 100.00 | | 100 | |

06 AGL0129 00 02 13

Page 1 of 1

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# SCHEDULE OF FORMS AND ENDORSEMENTS

**INSURED:** Charleston Exteriors LLC TERM: 03/26/2014 to 03/26/2015
**POLICY NUMBER:** AGL0011184-00

| FORM NO | TITLE |
|---|---|
| 06 ML0217 00 02 13 | COMMON POLICY DECLARATIONS |
| 06 AGL0123 00 02 13 | COMMERCIAL GENERAL LIABILITY DECLARATIONS |
| 06 AGL0129 00 02 13 | SUPPLEMENTARY LOCATION, CLASSIFICATION AND PREMIUM SCHEDULE |
| 00 ML0012 00 09 04 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| SN 0038 0313 03 13 | SURPLUS LINES NOTICE |
| IL 00 21 05 04 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| IL P0 01 01 04 | OFAC |
| 00 AGL0101 00 02 13 | EXTERIOR INSULATION AND FINISH SYSTEM ABSOLUTE EXCLUSION ENDORSEMENT |
| 00 AGL0102 00 02 13 | POLYCHLORINATED BIPHENYLS (PCBS) EXCLUSION ENDORSEMENT |
| 00 AGL0104 00 02 13 | PUNITIVE DAMAGES EXCLUSION ENDORSEMENT |
| 00 AGL0105 00 02 13 | SUBSIDENCE EXCLUSION |
| 00 AGL0107 00 02 13 | WRAP-UP EXCLUSION ENDORSEMENT |
| 00 AGL0109 00 02 13 | ASBESTOS EXCLUSION ENDORSEMENT |
| 00 AGL0110 00 02 13 | LEAD EXCLUSION ENDORSEMENT |
| 00 AGL0111 00 02 13 | LIMITED CROSS SUITS EXCLUSION |
| 00 AGL0115 00 02 13 | CONTRACTOR AND SUBCONTRACTOR EXCLUSION |
| 00 AGL0116 00 11 13 | EXPOSED WORK AREA LIMITATION ENDORSEMENT |
| 00 AGL0117 00 02 13 | SUBCONTRACTOR WARRANTY ENDORSEMENT |
| 00 AGL0118 00 02 13 | THREE STORY HEIGHT LIMITATION ENDORSEMENT |
| 00 AGL0130 00 02 13 | NEW YORK STATE OPERATIONS AND WORK EXCLUSION |
| 00 ML0003 00 04 12 | SERVICE OF SUIT |
| 00 ML0218 00 02 13 | COMMON POLICY CONDITIONS |
| 00 ML0219 00 02 13 | ANNUAL MINIMUM AND DEPOSIT PREMIUM ENDORSEMENT |
| 06 ML0215 00 02 13 | CLAIMS HANDLING PROCEDURES |
| 06 ML0216 00 02 13 | MINIMUM PREMIUM ENDORSEMENT |
| CG 00 01 12 07 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG 21 16 04 13 | EXCLUSION – DESIGNATED PROFESSIONAL SERVICES |
| CG 21 47 12 07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG 21 49 09 99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG 21 67 12 04 | FUNGI OR BACTERIA EXCLUSION |
| CG 21 90 01 06 | EXCLUSION OF TERRORISM |
| CG 21 96 03 05 | SILICA OR SILICA-RELATED DUST EXCLUSION |
| 00 AGL0100 00 02 13 | BLANKET ADDITIONAL INSURED ENDORSEMENT |
| 00 AGL0103 00 02 13 | PRIMARY AND NON-CONTRIBUTING INSURANCE WHERE REQUIRED BY WRITTEN CONTRACT(S) ENDORSEMENT |
| 00 AGL0106 00 02 13 | WAIVER OF SUBROGATION ENDORSEMENT |
| CG 20 10 07 04 | ADDITIONAL INSURED-OWNERS,LESSEES OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION |
| 06 ML0002 00 01 13 | SIGNATURE PAGE |
| | |
| | |
| | |

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

# SURPLUS LINES NOTICE

## SOUTH CAROLINA

THIS COMPANY HAS BEEN APPROVED BY THE DIRECTOR OR HIS DESIGNEE OF THE SOUTH CAROLINA DEPARTMENT OF INSURANCE TO WRITE BUSINESS IN THIS STATE AS AN ELIGIBLE SURPLUS LINES INSURER, BUT IS NOT AFFORDED GUARANTY FUND PROTECTION.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**POLICY NUMBER: AGL0011184-00**

**INTERLINE**
**IL 00 21 05 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

 © ISO Properties, Inc., 2001

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "Special nuclear material" or "by-product material";

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**POLICY NUMBER: AGL0011184-00**

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXTERIOR INSULATION AND FINISH SYSTEM ABSOLUTE EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from:

1. The design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

2. Any moisture-related or dry-rot related decay, infection or infestation of a house or other building caused, in whole or in part, by the "exterior insulation and finish system".

For the purposes of this endorsement, an "exterior insulation and finish system" means an exterior cladding or finish system applied to a house or other building, and consisting of:

a) A rigid or semi-rigid sheathing or insulation board, including gypsum-based, wood-based, or insulation-based materials; and

b) The adhesive or mechanical fasteners used to attach the insulation board to the substrate; and

c) A reinforcing mesh that is embedded in a coating applied to the sheathing or insulation board; and

d) A finish coat.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLYCHLORINATED BIPHENYLS (PCBs) EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage" or "personal and advertising injury" that, in any way, in whole or in part, arises out of, relates to or results from the manufacturing, handling, distribution, sale, application, consumption or use of any chemical or product known as polychlorinated biphenyls (PCBs) or which has the same chemical formulary, or which is generally known in the chemical trade as having a substantially similar formulation, structure, or function by whatever name manufactured, formulated, structured, sold or distributed.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUNITIVE DAMAGES EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss for punitive damages, treble damages, fines, penalties or exemplary damages.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUBSIDENCE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, directly or indirectly, arises out of, relates to, results from, contributes to or is aggravated by subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting, or any other movement of land or earth, regardless of whether such movement is a naturally occurring phenomena or is man-made.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WRAP-UP EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from any entity, project or location that is or was insured, designated, scheduled or covered under a "wrap-up or any consolidated insurance program". This exclusion applies regardless of whether:

**a.** Such "wrap-up or any consolidated insurance program" is expired, cancelled, terminated or nullified;

**b.** The limits of liability of such "wrap-up or any consolidated insurance program" are inadequate, impaired, reduced or exhausted; or

**c.** Insurance coverage under such "wrap-up or any consolidated insurance program" is excluded or otherwise not provided.

As used in this endorsement, "wrap-up or any consolidated insurance program" includes an owner controlled insurance program (OCIP), contractor controlled insurance program (CCIP) or any other project-specific insurance program covering any insured, entity, project or location.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage" or "personal and advertising injury" that, in any way, in whole or in part, arises out of, relates to or results from the "asbestos hazard".

This exclusion includes, but is not limited to, compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any other claim, "suit", demand, loss, cost, or expense arising out of, relating to or resulting from the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "asbestos", as well as any loss, costs, fees, expenses, penalties, judgments, fines, or sanctions arising out of, relating thereto or resulting therefrom.

As used in this exclusion, "asbestos hazard" means:

**(1)** The actual, alleged or threatened exposure to, consumption, ingestion of, inhalation of, absorption of, existence of, or presence of, "asbestos" in any manner or form whatsoever, either directly of indirectly;

**(2)** The actual or alleged failure to warn, advise or instruct related to "asbestos" in any manner or form whatsoever;

**(3)** The actual or alleged failure to prevent exposure to "asbestos" in any manner or form whatsoever; or

**(4)** The actual or alleged presence of "asbestos" in any manner or form whatsoever, in any place whatsoever, whether or not within a facility owned or used by the Named Insured, including its contents.

As used in this exclusion, "asbestos" means any substance, regardless of its form or state, containing asbestos.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LEAD EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from "lead hazard".

This exclusion includes but is not limited to compliance with any request, demand, order, or statutory or regulatory requirement, or any other action authorized or required by law, or any loss, cost or expense arising out of or relating to the investigation of, abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, lead, as well as any costs, fees, expenses, penalties, judgments, fines, or sanctions arising from or relating thereto.

As used in this exclusion, "lead hazard" means the:

**(1)** actual, alleged or threatened exposure to, consumption, ingestion of, inhalation of, absorption of, existence of, or presence of, lead in any manner or form whatsoever, either directly or indirectly;

**(2)** actual or alleged failure to warn, advise or instruct related to lead in any manner or form whatsoever;

**(3)** actual or alleged failure to prevent exposure to lead in any manner or form whatsoever; or

**(4)** actual or alleged presence of lead in any manner or form whatsoever, in any place whatsoever, whether or not within a building or structure, including its contents.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED CROSS SUITS EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from any claim or demand made, "suit" brought, or loss alleged by one insured against another insured.

However this exclusion does not apply to parties added as additional insureds via the use of an additional insured endorsement.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTOR AND SUBCONTRACTOR EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, Paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability** and Paragraph **2. Exclusions** of **Section I – Coverage C – Medical Payments**:

This insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of operations of any "contractor or subcontractor" working directly or indirectly on your behalf. This exclusion also applies to your alleged failure to supervise such "contractor or subcontractor".

For the purposes of this endorsement "contractor or subcontractor" shall mean any contractor or subcontractor that is hired to do work on your behalf and includes any other contractors or subcontractors hired by your contractors or subcontractors to work on your behalf.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXPOSED WORK AREA LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability:**

Solely with respect to work or operations performed by the insured or a "subcontractor", this insurance does not apply to any "property damage" arising out of wind, hail, snow, rain, ice or any combination of these elements. However, this exclusion does not apply if a secure temporary covering, large enough to cover any exposed work area and able to withstand normal anticipated elements, has been properly secured in place before the insured or the "subcontractor" leaves the jobsite. This covering shall be available on all jobsites in the event of a sudden change of weather during an active job.

For the purposes of this endorsement only, "subcontractor" means any person or organization who is not an "employee" of an insured and does work or performs services for or on behalf of an insured.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SUBCONTRACTOR WARRANTY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section IV – Commercial General Liability Conditions** is amended by the addition of the following conditions:

1. You will obtain agreements, in writing, from all "subcontractors" for each and every job that you employ a "subcontractor", pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold you harmless, and any other insured under this policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of the work performed by the "subcontractor".

2. Certificates of Insurance for Commercial General Liability coverage written on standard Insurance Services Office, Inc. (ISO) forms, or their equivalent, with limits equal to or greater than the Limits of Insurance provided by this policy, will be obtained by you from all "subcontractors" prior to commencement of any work performed for any insured.

3. You, and any other insured under this policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(ies). Each Certificate of Insurance referenced in Paragraph **2.** above will show this additional insured designation.

Your failure to comply with all of the conditions set forth above will not invalidate the insurance provided to you under this policy or relieve of us of our obligation to you under the terms of this policy. However, if any of the above conditions are not satisfied, or if we determine that such insurance was not in force at the time of any injury or damage insured under this policy, we will calculate the final earned premium due to us using our rules and rates for an "uninsured subcontractor".

For the purposes of this endorsement only, "subcontractor" means any person or organization who is not an "employee" of an insured and does work or performs services for or on behalf of an insured.

For the purposes of this endorsement only, "uninsured subcontractor" means any "subcontractor" who does not meet all of the conditions set forth above.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# THREE STORY HEIGHT LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability**:

This insurance does not apply to any "bodily injury", "property damage" or "personal and advertising injury" arising out of any contracting operations performed by you or by a subcontractor working directly or indirectly on your behalf on:

**(1)** The exterior sides of a building where the work is performed at a height that exceeds three stories. However, this paragraph **(1)** does not apply to roofing operations.

**(2)** Structures, other than buildings, where the work is performed at a height in excess of 50 feet.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW YORK STATE OPERATIONS AND WORK EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage" or "personal and advertising injury" arising out of operations or work performed in the State of New York by the insured or by subcontractors engaged by the insured.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

It is agreed that:

1. In the event of the failure of the **Insurer** to pay any amount claimed to be due hereunder, the **Insurer**, at the request of the **Insured**, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction. All matters arising under this Policy shall be determined in accordance with the law and practice of such Court, provided that nothing shall prohibit the **Insurer** from removing any action, suit or proceeding to a United States District Court. The **Insurer** shall abide by the final decision of such court or any appellate court in the event of an appeal.

2. Service of process in the above described action, suit or proceeding may be made upon: General Counsel, Arch Insurance Group Inc., 300 Plaza Three, Jersey City, NJ 07311-1107. Upon the request of the **Insured**, such General Counsel shall give a written undertaking to enter an appearance on behalf of the **Insurer** in the event that such an action, suit or proceeding shall be instituted.

3. Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the **Insurer** hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified in such statute as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted against the **Insurer** upon this Policy. The Superintendent, Commissioner or Director of Insurance or other officer is hereby authorized and directed to accept service of process on behalf of the **Insurer** in any such action, suit or proceeding and to mail a copy of such process to the above mentioned General Counsel.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

Policy Number:

Named Insured:

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G. Amendments To The Commercial General Liability Coverage Form**

The Commercial General Liability Coverage Form is amended as follows:

1. Under the **SUPPLEMENTARY PAYMENTS – COVERAGE A AND B** provision, Paragraph **2.** is deleted in its entirety.
2. Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** Condition **9.** is deleted in its entirety.

 Copyright, Insurance Services Office, Inc., 1982, 1983

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ANNUAL MINIMUM AND DEPOSIT PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

The following condition is added to **Common Policy Conditions**:

**Annual Minimum And Deposit Premium**

The premium designated in this policy as "advance premium" is a minimum and deposit premium, which shall be credited to the amount of the earned premium due at the end of the policy period.

At the close of each period (or part thereof terminating with the end of the policy period) designated in the Declarations as the audit period, the earned premium including any premium adjustments made by endorsement to this policy during the policy period shall be computed for such period and upon notice thereof to the Named Insured, shall become due and payable.

If the total earned premium for the policy period is less than the premium designated as "advance premium", premium designated in this policy as "advance premium" is the minimum premium for the policy period indicated, and is not subject to further adjustment.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

## Claims Handling Procedures

An important value of your insurance coverage is the ability of the insurance company to respond when you have a claim. Arch Specialty Insurance Company is committed to providing its insureds with effective claim services.

Notices of each incident, claim or suit must be sent immediately to:

Arch Specialty Insurance Company
Contract Binding Operations Claims
10909 Mill Valley Road, Suite 210
P.O. Box 542033
Omaha, NE 68154
Phone: 877 688-ARCH (2724)
Fax: 866 266-3630
E-mail: Claims@ArchInsurance.com

You will be contacted by a representative of the company's Claim Department. This representative will confirm receipt of the loss notice directly to you, provide a company claim number for all future correspondence, refer to legal counsel if necessary, and discuss further handling of the claim.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMON POLICY CONDITIONS

The following condition is added to **Common Policy Conditions**:

**Minimum Premium**

In the event of cancellation by the first Named Insured, the premium due under this policy will be the greater of the following:

(1) The Minimum and Deposit premium shown in the Declarations multiplied by the applicable short-rate earned premium factor;

(2) The earned premium based upon the policy rate multiplied by the gross receipts, payroll or other premium adjustment basis for the policy period; or

(3) The absolute minimum premium of 25% of the premium shown in the Declarations.

For purposes of this endorsement, cancellation of this policy for nonpayment of premium by the first Named Insured's premium finance company shall be deemed to be cancellation by the first Named Insured.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b.**This insurance applies to "bodily injury" and "property damage" only if:**

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

f.Pollution

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)**At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

**This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.**

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Exclusions** c. **through** n. **do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section** III – **Limits Of Insurance.**

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

b. **Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.**

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage

**B.**

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4.Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.**We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

3. **"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.**

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. **"Insured contract" means:**

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspetion, architectural or engineering activities.

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

**However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":**

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

POLICY NUMBER: AGL0011184-00

COMMERCIAL GENERAL LIABILITY
CG 21 16 04 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
|---|
| 1. |
| 2. |
| 3. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

 © Insurance Services Office, Inc., 2012

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Copyright, Insurance Services Office, Inc., 1998

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

**1.** The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

© ISO Properties, Inc., 2004

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**5.** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**6.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

**a.** Physical injury that involves a substantial risk of death; or

**b.** Protracted and obvious physical disfigurement; or

**c.** Protracted loss of or impairment of the function of a bodily member or organ.

Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the thresholds in Paragraphs **B.5.** or **B.6.** are exceeded.

With respect to this Exclusion, Paragraphs **B.5.** and **B.6.** describe the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part or Policy.

In the event of any incident of "terrorism" that is not subject to this Exclusion, coverage does not apply to "any injury or damage" that is otherwise excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2004

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION II – WHO IS AN INSURED** is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:

**a.** In the performance of your ongoing operations or "your work", including "your work" that has been completed; or

**b.** In connection with your premises owned by or rented to you.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NON-CONTRIBUTING INSURANCE WHERE REQUIRED BY WRITTEN CONTRACT(S) ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **4. Other Insurance** under the **Conditions** section:

**d. Primary and Non-Contributing Insurance**

Where you are specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by you before any "occurrence" or offense, this insurance will be primary and the other insurance will not contribute with this insurance, but only if and to the extent required by that written contract.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF SUBROGATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization: Where required by written contract**

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** under the **Conditions** section:

We waive any right of recovery we may have against the person or organization shown in the **SCHEDULE** above because of payments we make for injury or damage arising out of your operations or "your work" done under a written contract with that person or organization.

All other terms and conditions of this Policy remain unchanged.
Endorsement Number:

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

POLICY NUMBER: AGL0011184-00

COMMERCIAL GENERAL LIABILITY
CG 20 10 07 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Builders FirstSource Group LLC South East<br>Attn: Leagal Department<br>2001 Bryan Street<br>Suite 1600<br>Dallas TX 75201 | 610 Black Oak Blvd<br>Summerville SC 29485 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties, Inc., 2004

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

Arch
Insurance Group®

Signature Page

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be executed and attested.

Michael R. Murphy
President

Patrick K. Nails
Secretary

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

* Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
E-Mail: sphughes@hghpa.com
WRITER'S DIRECT: 843-522-2414

VIA US MAIL
June 14, 2017

Arch Specialty Insurance Group
Post Office Box 542033
Omaha, NE 68154

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.

| | |
|---|---|
| Civil Action No.: | 2016-CP-10-03783 |
| Pending: | Court of Common Pleas, Charleston County, SC |
| Project Name: | The Retreat at Charleston National Country Club, National Drive, Mt. Pleasant, SC 29466 |
| Your Insured: | Charleston Exteriors, LLC |
| Liability Carrier: | Arch Specialty Insurance Group |
| Our File No.: | 11981 SPH |

To Whom It May Concern:

This firm has been retained to represent the interests of Builders FirstSource-Southeast Group, LLC, in connection with the defense of its interests against those claims asserted, in the captioned action, by Amended Complaint of the Plaintiffs, The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime. By that action, the Plaintiffs have sought recovery of damages allegedly occasioned by deficiencies in the design, development, construction, and/or component materials of The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, as asserted by the Plaintiffs, include damages purportedly relating to alleged defects in framing, inclusive of the installation of windows and doors at all or a portion of the project. A review of the relevant subcontract agreements reveals that your insured, Charleston Exteriors, LLC, was responsible for performing this work.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Charleston Exteriors, LLC, as "Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for ongoing and completed operations, under any comprehensive general liability policy or policies issued in favor of Charleston Exteriors, LLC in connection with its services at The Retreat at Charleston National Country Club project. The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreements further required that Charleston Exteriors, LLC indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

Moreover, it is my understanding that the relevant policies issued in favor of Charleston Exteriors, LLC in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured thereunder. Those policies include (perhaps among others), the following:

<u>Arch Specialty Insurance Group</u>

Policy# AGL 0011184-00
Effective 05/26/2014 – 05/26/2015

Please consider this correspondence as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that Charleston Exteriors, LLC defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance of the work by Charleston Exteriors, LLC, at The Retreat at Charleston National Country Club townhome/condominium project, specifically to include claims relating to and/or arising out of the acts and/or omissions of Charleston Exteriors, LLC. Additionally, please consider this as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that all insurers of Charleston Exteriors, LLC, from the date of the subcontract agreements between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Charleston Exteriors, LLC as "Subcontractor" (dated October 17, 2012), whether or not such insurers are identified hereinabove, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as an additional insured, against those claims asserted in the above referenced litigation. Copies of the referenced Subcontracts are enclosed herewith, together with the related Certificates of Insurance.

In the event that this correspondence has failed to reach the proper person or entity, I would appreciate your cooperation in forwarding this correspondence to such appropriate department or person within Arch Specialty Insurance Group,

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

for responsive action. Please contact me upon your receipt of this demand, so that we may coordinate the participation of Arch Specialty Insurance Group in providing a defense and indemnity in favor of Builders FirstSource-Southeast Group, LLC in the captioned litigation.

Yours truly,

HOWELL, GIBSON AND HUGHES, P.A.

Stephen P. Hughes

SPH/hw

Enclosure

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Hart, Quinn K.**

---

**From:** Breck Miller
**Sent:** 7/20/2017 11:04 PM
**To:** Stephen P. Hughes
**CC:**
**BCC:**

**Attachments:**

**Priority:** Normal
**Request:** None
**Security:** Normal
**Deliver After** 0 days(s)
**Subject:** The Retreat at Charleston National Country Club (Charleston Exteriors US 217433)

Stephen,

Again, thank you for taking my call and your professional courtesy to you have extended to both myself and my client.

I have attached my request for information. I understand that some of what I have requested, you don't have..at least

At this time. If you would please forward what you do have, I will review it and get back to you as quick as possible.

Also, please send the information and documents to my firms' e-mail; NOT US Claim Solutions e-mail listed on my letter.

It is: bmiller@breckenridgegroupllc.com <mailto:bmiller@breckenridgegroupllc.com>

My cell is: (949) 280-2504

Cordially,

Breck Miller, JD MCNE

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Arch Specialty Insurance Company

1299 Farnam Street
Suite 500
Omaha, NE 68102

P.O. Box 542033
Omaha, NE 68154

T: 877.688.2724
F: 866.266.3630

archinsurance.com

July 20, 2017

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1616 2243 44***
***& REGULAR MAIL***

Howell, Gibson and Hughes, P.A.
Attn: Stephen P. Hughes
P.O. Box 40
Beaufort, SC 29901-0040

**Re: Charleston Exteriors, LLC/ Retreat at Charleston National Country Club HOA**
Arch Insured : Charleston Exteriors, LLC
Policy No(s). : AGL0011184-00 | 03/26/14 to 03/26/15
Claimant(s) : Retreat at Charleston National Country Club HOA, Builders FirstSource- : Southeast Group, LLC
Arch Claim No. : 000013080570

To Whom It May Concern:

On behalf of Arch Specialty Insurance Company (hereinafter, "Arch"), this letter follows up on the captioned matter by this office. Please address all correspondence to the undersigned at Arch Insurance Group, P.O. Box 542033, Omaha, NE 68154. Be sure to reference the claim number on any correspondence. You also may reach me by phone at (818) 237-3392 or e-mail at stacy.green@empiricallm.com.

Arch is in receipt of this matter regarding alleged damages caused by Charleston Exteriors, LLC (hereafter "Charleston Exteriors"). Builder First Source-Southeast Group, LLC has also tendered a request for defense and indemnity as an additional insured for The Retreat at Charleston National Country Club. Arch's coverage investigation is not yet completed as it pertains to the referenced policy. Correspondingly, we may neither accept nor reject the claims presented at this time under said policy. Arch will however, continue to investigate and handle this claim under a reservation of rights for the aforementioned policy as it relates to Charleston Exteriors and The Retreat at Charleston National Country Club HOA.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Charleston Exteriors, LLC July 20, 2017
Re: Charleston Exteriors, LLC/Retreat at Charleston National Country Club HOA

## ***FACTUAL BACKGROUND***

This construction defect claim action arises from a tender from the claimant's legal counsel regarding alleged damages caused by the insured work at The Retreat at Charleston National Country Club. It appears the damages are related to defects in framing and the installation of windows and doors. It appears that the country club is seeking coverage as and additional insured.

We have engaged U.S. Claim Solutions to investigate this matter on our behalf.

## ***THE POLICY***

Arch issued Commercial General Liability Policy AGL0011184-00 with effective dates March 26, 2014 to March 26, 2015 to Charleston Exteriors, LLC. The policy has limits of $1,000,000 each occurrence, $2,000,000 general aggregate limit and a $2,000,000 products/ completed operations aggregate limit.

We now refer you to certain sections of the policies as follows:

### COMMERCIAL GENERAL LIABILITY COVERAGE

***SECTION I – COVERAGES***

***COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

***1. Insuring Agreement***

***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result But:*

*(1) The amount we will pay for damages is limited as described in* ***Section - Limits Of Insurance****; and*

*(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under* ***Coverages A*** *or* ***B*** *or medical expenses under* ***Coverage C.***

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Charleston Exteriors, LLC July 20, 2017
Re: Charleston Exteriors, LLC/Retreat at Charleston National Country Club HOA

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under* ***Supplementary Payments - Coverages A and B.***

***2. Exclusions***

*This insurance does not apply to:*

***Expected Or Intended Injury***

*"Bodily injury" or 'property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

**Requirement of an Occurrence**

The Arch policy(s) requires an "occurrence" of "property damage" or "bodily injury" within the policy period(s) before coverage is triggered. The definition of occurrence is:

*"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

Certain claims cannot arise out of an accident that would satisfy the definition of an occurrence. These claims include breach of contract and breach of warranties. The Arch policy(s) does not afford coverage for these claims.

* * *

The policy(s) also contains the following language:

***1. Insuring Agreement***

***b.*** *This insurance applies to "bodily injury" and "property damage" only if:*

*(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

***c.*** *"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

*under Paragraph **1.** of Section – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.*

***d.*** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

*(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

*(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

*(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

This policy language eliminates coverage for any "bodily injury" or "property damage" which was known by an "insured" prior to the inception date of the policy(s). If it is later determined that Charleston Exteriors and The Retreat at Charleston National Country Club HOA received notice of an "occurrence" or claim, in whole or in part, prior to the policy period(s), then the aforementioned policy language will serve to bar coverage for those damages, as well as any which continued into the Arch policy period(s).

* * *

**Definition of Property Damage**

*"Property damage" means:*

***a.*** *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

***b.*** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

*For the purposes of this insurance, electronic data is not tangible property.*

*As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

*processing devices or any other media which are used with electronically controlled equipment.*

Most courts consistently uphold the rule that economic losses such as loss of profits and loss of benefit of the bargain do not constitute "property damage" as defined by the policy. Further, a claim for diminution in value is an economic damage, which does not meet the definition of "property damage" would not be considered under the Arch policy(s).

* * *

The claim alleges faulty construction. Arch recognizes that these construction defects could have led to property damage. These allegations could potentially satisfy the policy(s) requirements and/or meet the threshold to be considered as property damage.

To the extent the claims against Charleston Exteriors and The Retreat at Charleston National Country Club HOA include out-of-pocket expenses, such as the defects themselves or Breach of Warranty and Breach of Contract, these do not satisfy the definition of property damage.

Arch reserves the right to disclaim coverage for the claims for property damage that are not included within the definition described above.

**Work Product Exclusions**

The Arch policy(s) precludes coverage for injury or damage to, and the cost to restore, repair or replace the insured's own work. "Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work". For your convenience, the work product exclusions and definitions are produced below:

***2. Exclusions***

*This insurance does not apply to:*

***Damage to Property***

*"Property damage" to:*

***(1)*** *Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

***(2)*** *Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;*

***(3)*** *Property loaned to you;*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

*(4) Personal property in the care, custody or control of the insured;*

*(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

*(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.*

***Paragraphs (1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.*

***Paragraph (2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.*

***Paragraph (3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.*

***Paragraph (6)** of this exclusion does not apply to "property damage" included in the "products — completed operations hazard".*

***Damage to "your product"***

*"Property damage" to "your product" arising out of it or any part of it.*

***Damage to "your work"***

*"Property damage" to "your work" arising out of it or any part of it and included in the "products — completed operation hazard".*

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

***Damage to Impaired Property Or Property Not Physically Injured***

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

*(1) A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or*

*(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms,*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

The aforementioned exclusions regarding "***Damage to Property***" do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **Section – LIMITS OF INSURANCE.**

***Recall of Products, Work or Impaired Property***

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

*(1) "Your product";*

*(2) "Your work"; or*

*(3) "Impaired property*

*If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.*

* * *

*"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*

***a.*** *It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

***b.*** *You have failed to fulfill the terms of a contract or agreement;*

*if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.*

*"Your product":*

***a.*** *Means:*

*(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

*(a) You;*

*(b) Others trading under your name;*

*(c) A person or organization whose business or assets you have acquired; and*

*(2) Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.*

***b.*** *Includes:*

*(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

*(2) The providing of or failure to provide warnings or instructions.*

***c.*** *Does not include vending machines or other property rented to or located for use of others but not sold.*

To the extent that Charleston Exterior's and The Retreat at Charleston National Country Club HOA's work is damaged or defective, Arch reserves the right to disclaim coverage based upon the above exclusions.

Arch reserves the right to decline coverage for claims of loss of use for property not physically injured based upon the impaired property exclusion, that are not the result of a sudden and accidental injury after the work has been put to its intended use.

Arch further reserves its rights as to the work product exclusions.

**Products-Completed Operations Hazard**

The policy(s) contains definitions for Products-Completed Operations Hazard, which includes "bodily injury" and "property damage". Work that has not yet been completed does not fit within the definition of products-completed operations. The definition states:

*"Products-completed operations hazard" means:*

***a.*** *All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product' or "your work" except:*

*(1) Products that are still in your physical possession; or*

*(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

*(a) When all of the work called for in your contract has been completed.*

*(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

*(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

*Work that may need maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

***b.*** *This does not include "bodily injury" or "property damage" arising out of:*

*(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;*

*(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or*

*(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.*

* * *

To the extent that the work is incomplete or abandoned, the policy(s) may preclude coverage.

**Contractual Liability Exclusion**

***2. Exclusions***

*This insurance does not apply to:*

***Contractual Liability***

*"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

*(1) That the insured would have in the absence of the contract or agreement; or*

*(2) Assumed in a contract or agreement that is an "insured contract', provided the "bodily injury" or "property damage" occurs subsequent to the execution of*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

*the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*

***(a)*** *Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*

***(b)*** *Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

*"Insured contract" means:*

***a.*** *A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";*

***b.*** *A written sidetrack agreement;*

***c.*** *Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;*

***d.*** *An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;*

***e.*** *A written elevator maintenance agreement;*

***f.*** *That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

***Paragraph f.*** *does not include that part of any contract or agreement:*

***(1)*** *That indemnities a railroad for 'bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;*

***(2)*** *That indemnifies an architect, engineer or surveyor for injury damage arising out of:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

*(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or*

*(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or*

*(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **Paragraph (2)** above or supervisory, inspection, architectural or engineering activities.*

The policies contain the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SUBSIDENCE EXCLUSION**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:*

*This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage" or "personal and advertising injury" that in any way, in whole or in part, directly or indirectly, arises out of, relates to, results from, contributes to or is aggravated by subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, consolidating, compacting, flowing, rising, tilting, or any other movement of land or earth, regardless of whether such movement is a naturally occurring phenomena or is man-made.*

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXPOSED WORK AREA LIMITATION ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Charleston Exteriors, LLC July 20, 2017
Re: Charleston Exteriors, LLC/Retreat at Charleston National Country Club HOA

*The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability:***

*Solely with respect to work or operations performed by the insured or a "subcontractor", this insurance does not apply to any "property damage" arising out of wind, hail, snow, rain, ice or any combination of these elements. However, this exclusion does not apply if a secure temporary covering, large enough to cover any exposed work area and able to withstand normal anticipated elements, has been properly secured in place before the insured or the "subcontractor" leaves the jobsite. This covering shall be available on all jobsites in the event of a sudden change of weather during an active job. For the purposes of this endorsement only, "subcontractor" means any person or organization who is not an "employee" of an insured and does work or performs services for or on behalf of an insured.*

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TOTAL POLLUTION EXCLUSION ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

***f. Pollution***

***(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.*

***(2)** Any loss, cost or expense arising out of any:*

> ***(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or*
>
> ***(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".*

Arch expressly reserves their right to apply the terms of the above exclusion.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

To: Charleston Exteriors, LLC July 20, 2017
Re: Charleston Exteriors, LLC/Retreat at Charleston National Country Club HOA

**CONCLUSION**

Arch will reserve its rights under the policies and proceed accordingly with its handling of this matter. Please note that nothing stated or omitted herein or any other action or inaction by or on behalf of Arch should be seen as a waiver of the right to rely on any policy term or condition or provision of applicable law in determining Arch's rights and obligations.

Arch reserves the right to commence and prosecute any legal action including but not limited to a declaratory relief action to obtain a judicial determination of whether the policies afford coverage for any of the claims set forth in this action and of the obligation, if any, of Arch to defend this action.

Thank you for your attention to this matter.

Respectfully,

Stacy Green- Claims Examiner
**Empirical Loss Management LLC**

/cmd-t

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Hart, Quinn K.**

| | |
|---|---|
| **From:** | Witt Cox |
| **Sent:** | 7/24/2017 12:31 PM |
| **To:** | bmiller@breckenridgegroupllc.com |
| **CC:** | Cece A Boyne; Stephen P. Hughes |
| **BCC:** | |
| **Attachments:** | 445007.docx |
| **Priority:** | Normal |
| **Request:** | None |
| **Security:** | Normal |
| **Deliver After** | 0 days(s) |
| **Subject:** | {Matter No.[11981 SPH]}{Retreat at Charleston National vs Builders FirstSource} |

Dear Ms. Miller,

Attached hereto is correspondence responding to your July 20, 2017 letter requesting documents relating to Charleston Exteriors, LLC and the above referenced matter.

Best,

Witt Cox

Howell, Gibson and Hughes, P.A.

P.O. Box 40

Beaufort, SC 29901

843-522-2413

wcox@hghpa.com <mailto:wcox@hghpa.com>

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

* Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
E-Mail: sphughes@hghpa.com
WRITER'S DIRECT: 843-522-2414

August 4, 2017

Ms. Stacy Green
Claims Examiner
Arch Specialty Insurance Group
Post Office Box 542033
Omaha, NE 68154

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
Arch Claim Number: 000013080570
Civil Action No.: 2016-CP-10-03783
Our File No.: 11981 SPH

Dear Ms. Green:

This will acknowledge receipt of and thank you for your letter of July 20, 2017, by which you responded on behalf of Arch Specialty Insurance Company, to my previous demand for defense and indemnity against those claims asserted in the captioned litigation.

I would note, initially, that your referenced correspondence of July 20, 2017 appears to set forth a response to a demand for defense and indemnity as purportedly asserted by The Retreat at Charleston National County Club HOA. Contrary to what appear to be your understandings however, The Retreat at Charleston National Country Club HOA, Inc., along with The Retreat at Charleston National Country Club Horizontal Property Regime, is a designated Plaintiff in the captioned action, which seeks recovery of damages against various entities, inclusive of my client, Builders FirstSource-Southeast Group, LLC. As more specifically set forth within my earlier correspondence of June 14, 2017 (a copy of which is enclosed herewith), my demand on behalf of Builders FirstSource-Southeast Group, LLC, sought defense and indemnity, against the

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

claims asserted by the referenced Plaintiffs (The Retreat at Charleston National Country Club HOA, et al), pursuant to the Builders FirstSource status as an additional insured under any policy or policies issued by Arch Specialty Insurance Company to its primary insured, Charleston Exteriors, LLC. To the extent that you may have any continuing misunderstanding or question as to the referenced claim for defense and indemnity, I would ask that you contact me so that we can discuss the matter in greater detail.

I would also note that the general explanation of those policy provisions, as contained within the Arch Specialty Insurance Policy (referenced within your correspondence of July 20, 2017), as issued to Charleston Exteriors, LLC would appear to me to confirm coverage to Builders FirstSource-Southeast Group as an additional insured, and to require defense and indemnity, in favor of Builders FirstSource, by Arch Specialty Insurance Company, against those claims asserted in the captioned action. Under the circumstances, please consider the within correspondence as my reiterated demand on behalf of Builders FirstSource for such defense and indemnity.

Thanking you for your continuing consideration.

With kindest regards, I am

Yours truly,

HOWELL, GIBSON AND HUGHES, P.A.


Stephen P. Hughes
SPH/ad
Enclosure

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

*Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
WRITER'S E-Mail: wcox@hghpa.com
PARALEGAL'S E-Mail: bgiles@hghpa.com
WRITER'S DIRECT: 843-522-2413

August 9, 2017

VIA EMAIL ONLY

Ms. Stacy Green
Claims Examiner
Arch Specialty Insurance Group
Post Office Box 542033
Omaha, NE 68154

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
File No: 11981 SPH
Civil Action: 2016-CP-10-03783
Your Insured: Charleston Exteriors, LLC

Dear Ms. Green:

Please provide a copy of the Commercial General Liability Policy AGL0011184-00 with effective dates March 26, 2014 to March 26, 105 to Charleston Exteriors, LLC referenced in your July 20, 2017 correspondence.

Should you have any question or comment as to any matters set forth herein, please feel free to contact me.

Sincerely,

HOWELL, GIBSON AND HUGHES, P.A

s/Witt

William H. Cox, III

WHC/whc

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Arch | Insurance

Arch Specialty Insurance Company

1299 Farnam Street
Suite 500
Omaha, NE 68102-1880

P.O. Box 542033
Omaha, NE 68154

T: 877.688.2724
F: 866.266.3630

archinsurance.com

December 14, 2017

***CERTIFIED MAIL/RRR***
***ARTICLE # 9214 8969 0099 9790 1618 6258 59***

Howell, Gibson and Hughes, P.A.
Attention: Stephen P. Hughes
P.O. Box 40
Beauford, South Carolina 29901-0040

RE: **The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al**
*Court of Common Pleas Fifteenth Judicial District, South Carolina Case No. 2016-CP-3783*

| | | |
|---|---|---|
| Insured | : | Charleston Exteriors LLC |
| Policy No. | : | AGL0011184-00 |
| Effective Date | : | March 26, 2014 to March 26, 2015 |
| Date of Loss | : | Continuous |
| Our Claim No. | : | 000013080570 (Arch) |

Dear Mr. Hughes:

This letter follows up on our acknowledgement of the above captioned matter by Arch Specialty Insurance Company (hereafter "Arch"). Arch retained Empirical Loss Management LLC (hereafter "Empirical") to administer this claim. Please address all correspondence to the undersigned at the Nebraska offices of Arch, P.O. Box 542033, Omaha, NE 68154. Be sure to reference the claim number on any correspondence. You also may reach me by phone at (818) 237-3392 or e-mail at Dianna.OShea@empiricallm.com

Arch is in receipt of your letter sent on behalf of Builders FirstSource-Southeast Group, LLC, tendering its defense under the referenced Arch policies. Arch's coverage investigation is not yet completed as it pertains to the policies. However, Arch will defend Builders FirstSource-Southeast Group, LLC subject to a full and complete reservation of rights as set forth below. In addition to the rights reserved below, Arch specifically reserves the following rights under the policy:

- The right to withdraw from the defense should facts or circumstances arise indicating that the lawsuit presents no potential for liability under the policies;
- The right to seek a declaration of its rights and duties regarding its defense and/or indemnity obligations;

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

- The right to seek reimbursement for any judgement or settlement paid pursuant to the reservations stated herein;
- The right to seek an allocation and reimbursement of defense costs paid to defend non-covered allegations, claims and causes of action;
- The right to seek reimbursement of all defense costs paid to defend the suit should it be established that the suit never presented a potential for covered liability; and
- The right to supplement or amend this reservation of rights.

Arch will agree to participate in Builders FirstSource-Southeast Group, LLC's defense on an equitable basis with all other parties and carriers providing coverage. Arch will open up a separate additional insured file and assign your file to another examiner for further handling.

The following is our analysis to date.

## *FACTUAL BACKGROUND*

This matter involves claims of construction defects to the Retreat at Charleston National Country Club located at National Drive, Mount Pleasant, South Carolina, 29466. The complaint alleges that after completion of the Project, the property sustained moisture and water infiltration. The claimed construction defects including but limited to failure of waterproofing, failure of building envelope, improper installation of windows, lack of sealants, and improper framing.

We received a contractor agreement executed between Builders FirstSource-Southeast Group, LLC and Charleston Exteriors LLC dated October 17, 2012. It includes an indemnity agreement and additional insured language.

## THE POLICY

Arch Specialty Insurance Company issued Commercial General Liability Policy AGL0011184-00 with effective dates of March 26, 2014 to March 26, 2015 to Charleston Exteriors LLC. The policy has limits of $1,000,000 each occurrence, $2,000,000 general aggregate limit and a $2,000,000 products/ completed operations aggregate limit.

We received contractor agreement executed between Builders FirstSource-Southeast Group, LLC's and Charleston Exteriors LLC dated October 17, 2012. It includes an indemnity agreement and additional insured language.

We now refer you to certain sections of the policy, as follows:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

**COMMERCIAL GENERAL LIABILITY COVERAGE**

***SECTION I – COVERAGES***

***COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

***1. Insuring Agreement***

***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our sole discretion, investigate any "occurrence" and settle any claim or "suit" that may result But:*

*(1) The amount we will pay for damages is limited as described in* ***Section - Limits Of Insurance****; and*

*(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under* ***Coverages A*** *or* ***B*** *or medical expenses under* ***Coverage C.***

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under* ***Supplementary Payments - Coverages A and B.***

***2. Exclusions***

*This insurance does not apply to:*

***Expected Or Intended Injury***

*"Bodily injury" or 'property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

**Requirement of an Occurrence**

The Arch policy(s) requires an "occurrence" of "property damage" or "bodily injury" within the policy period(s) before coverage is triggered. The definition of occurrence is:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

*"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

Certain claims cannot arise out of an accident that would satisfy the definition of an occurrence. These claims include breach of contract and breach of warranties. The Arch policy does not afford coverage for these claims.

* * *

The policy also contains the following language:

***1. Insuring Agreement***

***b.*** *This insurance applies to "bodily injury" and "property damage" only if:*

*(3) Prior to the policy period, no insured listed under Paragraph **1.** of Section – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

***c.*** *"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.*

***d.*** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

*(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

*(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

> *(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

This policy language eliminates coverage for any "bodily injury" or "property damage" which was known by an "insured" prior to the inception date of the policy. If it is later determined that Charleston Exteriors LLC received notice of an "occurrence" or claim, in whole or in part, prior to the policy, then the aforementioned policy language will serve to bar coverage for those damages, as well as any which continued into the Arch policy.

* * *

**Definition of Property Damage**

*"Property damage" means:*

***a.*** *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or*

***b.*** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

*For the purposes of this insurance, electronic data is not tangible property.*

*As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

Most courts consistently uphold the rule that economic losses such as loss of profits and loss of benefit of the bargain do not constitute "property damage" as defined by the policy. Further, a claim for diminution in value is an economic damage, which does not meet the definition of "property damage" would not be considered under the Arch policy.

* * *

The complaint alleges faulty construction. Arch recognizes that these construction defects could have led to property damage. These allegations could potentially satisfy the policy requirements and/or meet the threshold to be considered as property damage.

To the extent the claims against Charleston Exteriors LLC include out-of-pocket expenses, such as the defects themselves or Breach of Warranty and Breach of Contract, these do not satisfy the definition of property damage.

2:20-cv-00654-RMG Date Filed 02/06/20 Entry Number 1-1 Page 94 of 198

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

Arch reserves the right to disclaim coverage for the claims for property damage that are not included within the definition described above.

**Work Product Exclusions**

The Arch policy precludes coverage for injury or damage to, and the cost to restore, repair or replace the insured's own work. **"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work". For your convenience, the work product exclusions and definitions are produced below:**

***2. Exclusions***

*This insurance does not apply to:*

***Damage to Property***

*"Property damage" to:*

*(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;*

*(2) Premises you sell, give away, or abandon, if the "property damage" arises out of any part of those premises;*

*(3) Property loaned to you;*

*(4) Personal property in the care, custody or control of the insured;*

*(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or*

*(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.*

***Paragraphs (1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.*

***Paragraph (2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented, or held for rental by you.*

6

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

***Paragraph* (3), (4), (5)** *and* **(6)** *of this exclusion do not apply to liability assumed under a sidetrack agreement.*

***Paragraph* (6)** *of this exclusion does not apply to "property damage" included in the "products — completed operations hazard".*

***Damage to "your product"***

*"Property damage" to "your product" arising out of it or any part of it.*

***Damage to "your work"***

*"Property damage" to "your work" arising out of it or any part of it and included in the "products — completed operation hazard".*

*This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.*

***Damage to Impaired Property Or Property Not Physically Injured***

*"Property damage" to "impaired property" or property that has not been physically injured, arising out of:*

***(1)*** *A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or*

***(2)*** *A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms,*

*This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.*

The aforementioned exclusions regarding "***Damage to Property***" do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in **Section – LIMITS OF INSURANCE.**

***Recall of Products, Work or Impaired Property***

*Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

*(1) "Your product";*

*(2) "Your work"; or*

*(3) "Impaired property*

*If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.*

* * *

*"Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:*

*a.* *It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or*

*b.* *You have failed to fulfill the terms of a contract or agreement;*

*if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.*

*"Your product":*

*a.* *Means:*

*(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

*(a) You;*

*(b) Others trading under your name;*

*(c) A person or organization whose business or assets you have acquired; and*

*(2) Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.*

2:20-cv-00654-RMG Date Filed 02/06/20 Entry Number 1-1 Page 97 of 198

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

*b.* *Includes:*

*(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

*(2) The providing of or failure to provide warnings or instructions.*

*c.* *Does not include vending machines or other property rented to or located for use of others but not sold.*

To the extent that Charleston Exteriors LLC's work is damaged or defective, Arch reserves the right to disclaim coverage based upon the above exclusions.

Arch reserves the right to decline coverage for claims of loss of use for property not physically injured based upon the impaired property exclusion, that are not the result of a sudden and accidental injury after the work has been put to its intended use.

Arch further reserves its rights as to the work product exclusions.

**Products-Completed Operations Hazard**

The policy contains definitions for Products-Completed Operations Hazard, which includes "bodily injury" and "property damage". Work that has not yet been completed does not fit within the definition of products-completed operations. The definition states:

*"Products-completed operations hazard" means:*

*a.* *All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product' or "your work" except:*

*(1) Products that are still in your physical possession; or*

*(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:*

*(a) When all of the work called for in your contract has been completed.*

*(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.*

9

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

*(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.*

*Work that may need maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.*

***b.*** *This does not include "bodily injury" or "property damage" arising out of:*

*(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;*

*(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or*

*(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.*

* * *

To the extent that the work is incomplete or abandoned, the policy may preclude coverage.

**Contractual Liability Exclusion**

***2. Exclusions***

*This insurance does not apply to:*

***Contractual Liability***

*"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

*(1) That the insured would have in the absence of the contract or agreement; or*

*(2) Assumed in a contract or agreement that is an "insured contract', provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

*(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*

*(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

*"Insured contract" means:*

***a.*** *A written contract for a lease of premises. However, that portion of the written contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";*

***b.*** *A written sidetrack agreement;*

***c.*** *Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;*

***d.*** *An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;*

***e.*** *A written elevator maintenance agreement;*

***f.*** *That part of any other written contract or written agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.*

***Paragraph f.*** *does not include that part of any contract or agreement:*

*(1) That indemnities a railroad for 'bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;*

*(2) That indemnifies an architect, engineer or surveyor for injury damage arising out of:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

*(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or*

*(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or*

*(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in* ***Paragraph (2)*** *above or supervisory, inspection, architectural or engineering activities.*

The above referenced Arch policy also include the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION II – WHO IS AN INSURED** is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury", "property damage", or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:

**a.** In the performance of your ongoing operations or "your work", including "your work" that has been completed; or

**b.** In connection with your premises owned by or rented to you.

*All other terms and conditions of this Policy remain unchanged.*

The above referenced Arch policy also include the following endorsement:

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

**WRAP-UP EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", "property damage", or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from any entity, project or location that is or was insured, designated, scheduled or covered under a "wrap-up or any consolidated insurance program". This exclusion applies regardless of whether:

**a.** Such "wrap-up or any consolidated insurance program" is expired, cancelled, terminated or nullified;

**b.** The limits of liability of such "wrap-up or any consolidated insurance program" are inadequate, impaired, reduced or exhausted; or

**c.** Insurance coverage under such "wrap-up or any consolidated insurance program" is excluded or otherwise not provided.

As used in this endorsement, "wrap-up or any consolidated insurance program" includes an owner controlled insurance program (OCIP), contractor controlled insurance program (CCIP) or any other project-specific insurance program covering any insured, entity, project or location.

As it pertains to the policies, we received no information indicating that D.R. Horton and The Best Turn, Inc. agreed to participate in the project under a WRAP-UP program. To the extent it is shown that a WRAP-UP or other Owner Controlled Insurance Program was in place Arch expressly declines coverage pursuant to the terms and conditions of the above exclusion.

*All other terms and conditions of this Policy remain unchanged.*

The above referenced Arch policy also include the following endorsement:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

CONTRACTOR AND SUBCONTRACTOR EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury and Property Damage Liability**, Paragraph **2. Exclusions** of **Section I – Coverage B – Personal and Advertising Injury Liability** and Paragraph **2. Exclusions** of **Section I – Coverage C – Medical Payments**:

This insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of operations of any "contractor or subcontractor" working directly or indirectly on your behalf. This exclusion also applies to your alleged failure to supervise such "contractor or subcontractor".

For the purposes of this endorsement "contractor or subcontractor" shall mean any contractor or subcontractor that is hired to do work on your behalf and includes any other contractors or subcontractors hired by your contractors or subcontractors to work on your behalf.

*All other terms and conditions of this Policy remain unchanged.*

The above referenced Arch policies also include the following endorsement:

The above referenced Arch policy also include the following endorsement:

***THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.***

***FUNGI OR BACTERIA EXCLUSION***

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*A. The following exclusion is added to Paragraph* ***2. Exclusions*** *of* ***Section I – Coverage A – Bodily Injury And Property Damage Liability:***

***2. Exclusions***

*This insurance does not apply to:*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

***Fungi Or Bacteria***

***a.*** *"Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.*

***b.*** *Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.*

*This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.*

***B.*** *The following exclusion is added to Paragraph* ***2. Exclusions*** *of* ***Section I – Coverage B – Personal And Advertising Injury Liability:***

***2. Exclusions***

*This insurance does not apply to:*

***Fungi Or Bacteria***

***a.*** *"Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.*

***b.*** *Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.*

***C.*** *The following definition is added to the* ***Definitions*** *Section:*

*"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.*

*All other terms and conditions of this Policy remain unchanged.*

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

To: Howell, Gibson and Hughes, P.A.
Re: The Retreat at Charleston National Country Club Home Owners Association Inc. v. Winston Carlyle Charleston National LLC et al
Date: December 14, 2017

Arch expressly reserves their right to apply the terms of the above exclusion.

**CONCLUSION**

In sum, there appears to be coverage available for Builders FirstSource-Southeast Group, LLC under the referenced Arch policy. Arch will reserve its rights under the policy and proceed accordingly with its handling of this matter. Please note that nothing stated or omitted herein or any other action or inaction by or on behalf of Arch should be seen as a waiver of the right to rely on any policy term or condition or provision of applicable law in determining Arch's rights and obligations.

Arch reserves the right to commence and prosecute any legal action including but not limited to a declaratory relief action to obtain a judicial determination of whether the policies afford coverage for any of the claims set forth in this action and of the obligation, if any, of Arch to defend this action.

Arch will continue its investigation of this matter subject to a strict reservation of rights. Please advise us if you have any additional information which you would like to provide in support of your claim. While Arch will at any time re-analyze its position with the presentation of additional information, it would hope to hear something within 60 days from the date of this letter. Should anyone claiming coverage fail to submit additional information or documentation within that time frame, it may consider the tender formally declined for the reasons set forth herein.

Thank you for your attention to this matter.

Sincerely,

Dianna O'Shea
Claims Examiner
Empirical Loss Management LLC

/mk

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**EXHIBIT B**

STOCK COMPANY

# COMMERCIAL LINES POLICY

Western World
INSURANCE GROUP

**POLICY NUMBER:** NPP1379743

**Prior Policy Number:** NPP1354747

[X] WESTERN WORLD INSURANCE COMPANY [ ] TUDOR INSURANCE COMPANY [ ] STRATFORD INSURANCE COMPANY

## COMMON POLICY DECLARATIONS

**Named Insured and Mailing Address:**
HURLEY SERVICES LLC

836 LEBBY STREET

CHARLESTON, SC 29412

**Producer:**
ROE & ASSOCIATES INSURANCE & FINANCIAL SERVICES
7089 RIVERS AVE

CHARLESTON, SC 29406

SLA# 482773
Agent/Broker # 7101
William P. Pinson Jr.
TAPCO Underwriters, Inc.
3060 South Church Street
Burlington, NC 27215

THIS COMPANY HAS BEEN APPROVED BY THE DIRECTOR OR HIS DESIGNEE OF THE SOUTH CAROLINA DEPARTMENT OF INSURANCE TO WRITE BUSINESS IN THIS STATE AS AN ELIGIBLE SURPLUS LINES INSURER, BUT IT IS NOT AFFORDED GUARANTY FUND PROTECTION.

**Policy Period:** (Mo./Day/Yr.)
From: 05/15/2014 To: 05/15/2015 12:01 AM, standard time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | Premium |
|---|---|---|
| | Commercial Property Coverage Part | $ NOT COVERED |
| | Commercial General Liability Coverage Part | $ 1,044.00 |
| | Commercial Auto Coverage Part | $ NOT COVERED |
| | Commercial Inland Marine Coverage Part | $ NOT COVERED |
| | | $ |
| | | $ |
| Other Coverages: | Terrorism Risk Insurance Act | $ NOT COVERED |
| | | $ |
| | | $ |
| | | $ |
| | **TOTAL ADVANCE PREMIUM** | $ 1,044.00 |
| | Policy Fee | $ 110.00 |
| | Tax | $ 69.24 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | **GRAND TOTAL** | $ 1,223.24 |

**Forms and endorsements applying to this policy and attached at time of issue:**

**See Applicable Schedule Of Forms And Endorsements**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**COMMON POLICY DECLARATIONS** (continued)

**POLICY NUMBER: NPP1379743**

**The Named Insured Is:**

Individual  Partnership  X Limited Liability Company  Organization/Corporation  Trust

Other

| Location of Business: | Business Description: |
| --- | --- |
| 836 LEBBY STREET, CHARLESTON, SC 29412 | HANDYMAN |

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

# WESTERN WORLD INSURANCE GROUP

Western World Insurance Company
Tudor Insurance Company
Stratford Insurance Company

Administrative Office
400 Parson's Pond Drive
Franklin Lakes, New Jersey 07417-2600

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Countersigned: TAPCO Underwriters, Inc.
Burlington, NC
05/15/14 KHALL

By
Authorized Representative

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | NAMED INSURED |
|---|---|
| NPP1379743 | HURLEY SERVICES LLC |

| Form/Endorsement No./Edition Date | Title (Note- Titles are indications only. See actual form for correct name.) |
|---|---|
| WW230 (08/11) | COMMON DECLARATIONS PAGE |
| TAP-CRF (10/12) | CLAIM REPORTING INFORMATION |
| WW13(06/12) | CLASSIFICATION LIMITATION |
| WW615SC(03/11) | SOUTH CAROLINA CANCELLATION & NO |
| IL0017(11/98) | COMMON POLICY CONDITIONS |
| IL0021(09/08) | NUCLEAR ENERGY LIABILITY EXCLUSI |
| WW232(01/12) | COMMERCIAL LIABILITY COVERAGE PA |
| WW1(06/12) | DEDUCTIBLE ENDORSEMENT |
| WW183(05/12) | MINIMUM-EARNED PREMIUM (EXCEPT N |
| WW192(04/13) | PREMIUM BASIS END'T |
| WW204A(02/13) | STANDARD PROVISIONS ENDORSEMENT |
| WW251(12/94) | EARTH MOVEMENT EXCL |
| WW252(09/12) | LEAD CONTAMINATION EXCL (CONTRAC |
| WW254(06/12) | WHEN OTHER INSURANCE APPLIES |
| WW257(06/12) | EXCL-INJURY TO INDEP CONTRS |
| WW258A(06/12) | NON-CUMULATION OF POLICY LIMITS |
| WW266(1/96) | CROSS SUITS EXCLUSION |
| WW268(03/10) | CONTINUOUS & PROGRESSIVE AI & PI |
| WW269(09/12) | CONTINUOUS & PROGRESSIVE INJURY |
| WW401(06/12) | TOTAL ASBESTOS EXCLUSION |
| WW419(03/10) | PRIMARY INSURANCE - ADDITIONAL I |
| WW421(11/13) | WAIVER OF TRANSFER OF RIGHTS REC |
| WW424(09/10) | EXCL OF NUCLEAR/BIOLOGICAL/CHEMI |
| WW428(06/09) | ROOFING EXCLUSION-OPS/COMPL OPS |
| WW456(01/12) | COMMERCIAL GENERAL LIABILITY AME |
| CG0001(12/07) | COMMERCIAL GENERAL LIABILITY COV |
| CG0068(05/09) | RECORDING & DISTR OF MATERIAL/IN |
| CG2139(10/93) | CONTRACTUAL LIAB LIMITITATION |
| CG2147(12/07) | EMPLOYMENT-RELATED PRACTICES EXC |
| CG2167(12/04) | FUNGI OR BACTERIA EXCLUSION |
| CG2173(01/08) | EXCL-CERT ACTS OF TERROR |
| CG2186(12/04) | EXCL-EXTERIOR INSUL/FINISH SYST |
| CG2187(01/07) | CONDITIONAL EXCL OF CERTIFIED AC |
| UTS-246s(8-96) | CONTRACTORS SPEC COND |

**ADDITIONAL FORMS AND ENDORSEMENTS**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# COMMERCIAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: NPP1379743

Effective Date: 05/15/2014
12:01 AM, Standard Time

## COMMERCIAL GENERAL LIABILITY - LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $ 2,000,000 | |
| Products - Completed Operations Aggregate Limit | $ 1,000,000 | † |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |
| Each Professional Incident Limit (if applicable) | $ NOT COVERED | |

**† If the Limit is shown as Included, Products-Completed Operations are subject to the General Aggregate Limit.**

## PREMIUM

| Classification | Code No. | Premium Basis | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| Handyman | 95625 | p Payroll 15,000 | 10.730 | 32.170 | 161.00 | 483.00 |
| ADDITIONAL INSURED & PRIMARY NON-CONTRIBUTORY WORDING - SEE FORM WW419 | | | | | | 250.00 |
| WAIVER OF SUBROGATION - SEE FORM WW421 | | | | | | 150.00 |

Total Advance Premium $ 1,044.00

## FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this coverage part and made part of policy at time of issue:

**See Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

Policy number NPP1379743

# RATING WORKSHEET
TAPCO Underwriters, Inc.

Inspection Ordered Yes __ No X
Date Inspection Ordered ________

Business description: HANDYMAN

Program? Yes X No __ (AMS rate sheet attached)

**GL LIMITS**

| | | |
|---|---|---|
| General Aggregate | $ | 2,000,000 |
| Products/Completed Operations | $ | 1,000,000 |
| Personal and Advertising Injury | $ | 1,000,000 |
| Occurrence | $ | 1,000,000 |
| Fire Damage | $ | 100,000 |
| Medical Expense | $ | 5,000 |
| Each Professional Incident Limit | $ | NOT COVERED |

| Code | Premium Basis | | Products Rate | Prem/Ops Rate | Premiums Pr/Co | Premiums All Other |
|---|---|---|---|---|---|---|
| 95625 | p Payroll | 15,000 | 10.730 | 32.170 | 161.00 | 483.00 |
| | | | | | | 250.00 |
| | | | | | | 150.00 |

**Company Approval By** ________________

**Application Requested** Yes ____ No X **Application Needed** ________________

**Additional Comments** RATES PER TAPCO E-Z RATE CONTRACTORS PROGRAM [X]
RATED SAME AS EXPIRING [X]
TAPCO RENEWAL [ ]

HURLEY 5

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

STOCK COMPANY

# COMMERCIAL LINES POLICY

Western World INSURANCE GROUP

**POLICY NUMBER:** NPP1354747

Prior Policy Number: NPP1334835

[X] WESTERN WORLD INSURANCE COMPANY [ ] TUDOR INSURANCE COMPANY [ ] STRATFORD INSURANCE COMPANY

## COMMON POLICY DECLARATIONS

SLA# 482773

Agent/Broker # 7101
William P. Pinson Jr.
TAPCO Underwriters, Inc.
3060 South Church Street
Burlington, NC 27215

**Named Insured and Mailing Address:**

HURLEY SERVICES LLC

836 LEBBY STREET

CHARLESTON, SC 29412

THIS COMPANY HAS BEEN APPROVED BY THE DIRECTOR OR HIS DESIGNEE OF THE SOUTH CAROLINA DEPARTMENT OF INSURANCE TO WRITE BUSINESS IN THIS STATE AS AN ELIGIBLE SURPLUS LINES INSURER, BUT IT IS NOT AFFORDED GUARANTY FUND PROTECTION.

**Producer:**

ROE & ASSOCIATES INSURANCE & FINANCIAL SERVICES
7089 RIVERS AVE

CHARLESTON, SC 29406

**Policy Period:** (Mo./Day/Yr.)

From: 05/15/2013 To: 05/15/2014 12:01 AM, standard time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED.**
**THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | |
|---|---|---|
| | Commercial Property Coverage Part | $ NOT COVERED |
| | Commercial General Liability Coverage Part | $ 1,144.00 |
| | Commercial Auto Coverage Part | $ NOT COVERED |
| | Commercial Inland Marine Coverage Part | $ NOT COVERED |
| | | $ |
| | | $ |
| Other Coverages: | Terrorism Risk Insurance Act | $ NOT COVERED |
| | | $ |
| | | $ |
| | | $ |
| | **TOTAL ADVANCE PREMIUM** | $ 1,144.00 |
| | Policy Fee | $ 100.00 |
| | Tax | $ 74.64 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | **GRAND TOTAL** | $ 1,318.64 |

**Forms and endorsements applying to this policy and attached at time of issue:**

**See Applicable Schedule Of Forms And Endorsements**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**COMMON POLICY DECLARATIONS** (continued)

**POLICY NUMBER: NPP1354747**

**The Named Insured is:**

Individual    Partnership    X Limited Liability Company    Organization/Corporation    Trust

Other

Location of Business:
836 LEBBY STREET, CHARLESTON, SC 29412

Business Description:
HANDYMAN

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

# WESTERN WORLD INSURANCE GROUP

Western World Insurance Company
Tudor Insurance Company
Stratford Insurance Company

Administrative Office
400 Parson's Pond Drive
Franklin Lakes, New Jersey 07417-2600

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Countersigned: TAPCO Underwriters, Inc.
Burlington, NC
05/07/13 KHALL

By

Authorized Representative

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | NAMED INSURED |
|---|---|
| NPP1354747 | HURLEY SERVICES LLC |

| Form/Endorsement No./Edition Date | Title (Note- Titles are indications only. See actual form for correct name.) |
|---|---|
| WW230 (03/10) | COMMON DECLARATIONS PAGE |
| TAP-CRF (10/12) | CLAIM REPORTING INFORMATION |
| WW13(06/12) | CLASSIFICATION LIMITATION |
| WW615SC(03/11) | SOUTH CAROLINA CANCELLATION & NO |
| IL0017(11/98) | COMMON POLICY CONDITIONS |
| IL0021(09/08) | NUCLEAR ENERGY LIABILITY EXCLUSI |
| WW232(01/12) | COMMERCIAL LIABILITY COVERAGE PA |
| WW1(06/12) | DEDUCTIBLE ENDORSEMENT |
| WW183(05/12) | MINIMUM-EARNED PREMIUM (EXCEPT N |
| WW192(07/12) | PREMIUM BASIS END'T |
| WW204A(02/13) | STANDARD PROVISIONS ENDORSEMENT |
| WW251(12/94) | EARTH MOVEMENT EXCL |
| WW252(09/12) | LEAD CONTAMINATION EXCL (CONTRAC |
| WW254(06/12) | WHEN OTHER INSURANCE APPLIES |
| WW257(06/12) | EXCL-INJURY TO INDEP CONTRS |
| WW258A(06/12) | NON-CUMULATION OF POLICY LIMITS |
| WW266(1/96) | CROSS SUITS EXCLUSION |
| WW268(03/10) | CONTINUOUS & PROGRESSIVE AI & PI |
| WW269(09/12) | CONTINUOUS & PROGRESSIVE INJURY |
| WW401(06/12) | TOTAL ASBESTOS EXCLUSION |
| WW419(03/10) | PRIMARY INSURANCE - ADDITIONAL I |
| WW421(07/07) | WAIVER OF TRANSFER OF RIGHTS REC |
| WW424(09/10) | EXCL OF NUCLEAR/BIOLOGICAL/CHEMI |
| WW428(06/09) | ROOFING EXCLUSION-OPS/COMPL OPS |
| WW456(01/12) | COMMERCIAL GENERAL LIABILITY AME |
| CG0001(12/07) | COMMERCIAL GENERAL LIABILITY COV |
| CG0068(05/09) | RECORDING & DISTR OF MATERIAL/IN |
| CG2139(10/93) | CONTRACTUAL LIAB LIMITITATION |
| CG2147(12/07) | EMPLOYMENT-RELATED PRACTICES EXC |
| CG2167(12/04) | FUNGI OR BACTERIA EXCLUSION |
| CG2173(01/08) | EXCL-CERT ACTS OF TERROR |
| CG2186(12/04) | EXCL-EXTERIOR INSUL/FINISH SYST |
| UTS-246s(8-96) | CONTRACTORS SPEC COND |

**ADDITIONAL FORMS AND ENDORSEMENTS**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

# COMMERCIAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: NPP1354747

Effective Date: 05/15/2013
12:01 AM, Standard Time

## COMMERCIAL GENERAL LIABILITY - LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $ 2,000,000 | |
| Products - Completed Operations Aggregate Limit | $ 1,000,000 | † |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |
| Each Professional Incident Limit (if applicable) | $ NOT COVERED | |

**† If the Limit is shown as Included, Products-Completed Operations are subject to the General Aggregate Limit.**

## PREMIUM

| Classification | Code No. | Premium Basis | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| Handyman | 95625 | p Payroll 15,000 | 10.730 | 32.170 | 161.00 | 483.00 |
| ADDITIONAL INSURED & PRIMARY NON-CONTRIBUTORY WORDING - SEE FORM WW419 | | | | | | 250.00 |
| WAIVER OF SUBROGATION - SEE FORM WW421 | | | | | | 250.00 |

Total Advance Premium $ 1,144.00

## FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this coverage part and made part of policy at time of issue:

**See Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Policy number NPP1354747

# RATING WORKSHEET
## TAPCO Underwriters, Inc.

Inspection Ordered Yes __ No X
Date Inspection Ordered ________

Business description: HANDYMAN

Program? Yes X No __ (AMS rate sheet attached)

**GL LIMITS**

| | |
|---|---|
| General Aggregate | $ 2,000,000 |
| Products/Completed Operations | $ 1,000,000 |
| Personal and Advertising Injury | $ 1,000,000 |
| Occurrence | $ 1,000,000 |
| Fire Damage | $ 100,000 |
| Medical Expense | $ 5,000 |
| Each Professional Incident Limit | $ NOT COVERED |

| Code | Premium Basis | | Products Rate | Prem/Ops Rate | Premiums Pr/Co | Premiums All Other |
|---|---|---|---|---|---|---|
| 95625 | p Payroll | 15,000 | 10.730 | 32.170 | 161.00 | 483.00 |
| | | | | | | 250.00 |
| | | | | | | 250.00 |

**Company Approval By** ________________

**Application Requested** Yes ____ No X **Application Needed** ________________

**Additional Comments**
RATES PER TAPCO E-Z RATE CONTRACTORS PROGRAM [X]
RATED SAME AS EXPIRING [X]
TAPCO RENEWAL [ ]

HURLEY 10

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

STOCK COMPANY

# COMMERCIAL LINES POLICY

Western World INSURANCE GROUP

**POLICY NUMBER:** NPP1334835

Prior Policy Number: NEW

[X] WESTERN WORLD INSURANCE COMPANY [ ] TUDOR INSURANCE COMPANY [ ] STRATFORD INSURANCE COMPANY

## COMMON POLICY DECLARATIONS

**Named Insured and Mailing Address:**
HURLEY SERVICES LLC

201 SPARKLEBERRY LANE

LADSON, SC 29456

**Producer:**
ROE & ASSOCIATES INSURANCE & FINANCIAL SERVICES
7089 RIVERS AVE

CHARLESTON, SC 29406

SLA# 482773
Agent/Broker # 7101
William P. Pinson Jr.
TAPCO Underwriters, Inc.
3060 South Church Street
Burlington, NC 27215

**THIS COMPANY HAS BEEN APPROVED BY THE DIRECTOR OR HIS DESIGNEE OF THE SOUTH CAROLINA DEPARTMENT OF INSURANCE TO WRITE BUSINESS IN THIS STATE AS AN ELIGIBLE SURPLUS LINES INSURER, BUT IT IS NOT AFFORDED GUARANTY FUND PROTECTION.**

**Policy Period:** (Mo./Day/Yr.)
From: 05/15/2012 To: 05/15/2013 12:01 AM, standard time at your mailing address shown above.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGES FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | |
|---|---|---|
| | Commercial Property Coverage Part | $ NOT COVERED |
| | Commercial General Liability Coverage Part | $ 1,144.00 |
| | Commercial Auto Coverage Part | $ |
| | | $ |
| | | $ |
| | | $ |
| Other Coverages: | Terrorism Risk Insurance Act | $ NOT COVERED |
| | | $ |
| | | $ |
| | | $ |
| | **TOTAL ADVANCE PREMIUM** | $ 1,144.00 |
| | Policy Fee | $ 100.00 |
| | Tax | $ 74.64 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | **GRAND TOTAL** | $ 1,318.64 |

**Forms and endorsements applying to this policy and attached at time of issue:**

**See Applicable Schedule Of Forms And Endorsements**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**COMMON POLICY DECLARATIONS** (continued)

**POLICY NUMBER: NPP1334835**

**The Named Insured Is:**

Individual Partnership X Limited Liability Company | Organization/Corporation | | Trust

_ Other

Location of Business:
201 SPARKLEBERRY LANE, LADSON, SC 29456

Business Description:
HANDYPERSON

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART DECLARATIONS, THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

# WESTERN WORLD INSURANCE GROUP

Western World Insurance Company
Tudor Insurance Company
Stratford Insurance Company

Administrative Office
400 Parson's Pond Drive
Franklin Lakes, New Jersey 07417-2600

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy. If required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

Countersigned: TAPCO Underwriters, Inc.
Burlington, NC
05/23/12 JENIF184

By

Authorized Representative

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# SCHEDULE OF FORMS AND ENDORSEMENTS

| POLICY NUMBER: | NAMED INSURED |
|---|---|
| NPP1334835 | HURLEY SERVICES LLC |

| Form/Endorsement No./Edition Date | Title (Note- Titles are indications only. See actual form for correct name.) |
|---|---|
| WW230 (03/10) | COMMON DECLARATIONS PAGE |
| WW13(09/10) | CLASSIFICATION LIMITATION |
| WW615SC(03/11) | SOUTH CAROLINA CANCELLATION & NO |
| IL0017(11/98) | COMMON POLICY CONDITIONS |
| IL0021(09/08) | NUCLEAR ENERGY LIABILITY EXCLUSI |
| WW232(01/12) | COMMERCIAL LIABILITY COVERAGE PA |
| WW1(09/10) | DEDUCTIBLE ENDORSEMENT |
| WW183(03/11) | MINIMUM-EARNED PREMIUM (EXCEPT N |
| WW192(10/10) | PREMIUM BASIS END'T |
| WW204A(09/10) | STANDARD PROVISIONS ENDORSEMENT |
| WW248(08/04) | CONDO/THOUSE PROD/COMP OP EXCL |
| WW251(12/94) | EARTH MOVEMENT EXCL |
| WW252(03/10) | LEAD CONTAMINATION EXCL (CONTRAC |
| WW254(03/10) | WHEN OTHER INSURANCE APPLIES |
| WW257(09/07) | EXCL-INJURY TO INDEP CONTRS |
| WW258A(03/10) | NON-CUMULATION OF POLICY LIMITS |
| WW266(1/96) | CROSS SUITS EXCLUSION |
| WW268(03/10) | CONTINUOUS & PROGRESSIVE AI & PI |
| WW269(03/10) | CONTINUOUS & PROGRESSIVE INJURY |
| WW401(03/10) | TOTAL ASBESTOS EXCLUSION |
| WW419(03/12) | PRIMARY INSURANCE - ADDITIONAL I |
| WW421(07/07) | WAIVER OF TRANSFER OF RIGHTS REC |
| WW424(09/10) | EXCL OF NUCLEAR/BIOLOGICAL/CHEMI |
| WW428(06/09) | ROOFING EXCLUSION-OPS/COMPL OPS |
| WW456(01/12) | COMMERCIAL GENERAL LIABILITY AME |
| CG0001(12/07) | COMMERCIAL GENERAL LIABILITY COV |
| CG0068(05/09) | RECORDING & DISTR OF MATERIAL/IN |
| CG2139(10/93) | CONTRACTUAL LIAB LIMITITATION |
| CG2147(12/07) | EMPLOYMENT-RELATED PRACTICES EXC |
| CG2167(12/04) | FUNGI OR BACTERIA EXCLUSION |
| CG2173(01/08) | EXCL-CERT ACTS OF TERROR |
| CG2186(12/04) | EXCL-EXTERIOR INSUL/FINISH SYST |
| UTS-246s(8-96) | CONTRACTORS SPEC COND |

**ADDITIONAL FORMS AND ENDORSEMENTS**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# COMMERCIAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: NPP1334835

Effective Date: 05/15/2012
12:01 AM, Standard Time

## COMMERCIAL GENERAL LIABILITY - LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $ 2,000,000 | |
| Products - Completed Operations Aggregate Limit | $ 1,000,000 | † |
| Personal and Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| Each Occurrence Limit | $ 1,000,000 | |
| Damage to Premises Rented to You | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ 5,000 | Any One Person |
| Each Professional Incident Limit (if applicable) | $ NOT COVERED | |

**† If the Limit is shown as Included, Products-Completed Operations are subject to the General Aggregate Limit.**

## PREMIUM

| Classification | Code No. | Premium Basis | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| Handyman | 95625 | p Payroll 15,000 | 10.720 | 32.180 | 161.00 | 483.00 |
| PRIMARY INSURANCE - ADDITIONAL INSURED - SEE FORM WW419 | | | | | | 250.00 |
| WAIVER OF SUBROGATION - SEE FORM WW421 | | | | | | 250.00 |

Total Advance Premium $ 1,144.00

## FORMS AND ENDORSEMENTS

Forms and Endorsements applying to this coverage part and made part of policy at time of issue:

**See Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Policy number NPP1334835

# RATING WORKSHEET
## TAPCO Underwriters, Inc.

Inspection Ordered Yes __ No X
Date Inspection Ordered ________

Business description: HANDYPERSON

Program? Yes X No __ (AMS rate sheet attached)

**GL LIMITS**

| | | |
|---|---|---|
| General Aggregate | $ | 2,000,000 |
| Products/Completed Operations | $ | 1,000,000 |
| Personal and Advertising Injury | $ | 1,000,000 |
| Occurrence | $ | 1,000,000 |
| Fire Damage | $ | 100,000 |
| Medical Expense | $ | 5,000 |
| Each Professional Incident Limit | $ | NOT COVERED |

| Code | Premium Basis | | Products Rate | Prem/Ops Rate | Premiums Pr/Co | Premiums All Other |
|---|---|---|---|---|---|---|
| 95625 | p Payroll | 15,000 | 10.720 | 32.180 | 161.00 | 483.00 |
| | | | | | | 250.00 |
| | | | | | | 250.00 |

**Company Approval By** ____________________

**Application Requested** Yes ____ No X **Application Needed** ____________________

**Additional Comments**
RATES PER TAPCO E-Z RATE CONTRACTORS PROGRAM [X]
RATED SAME AS EXPIRING [ ]
TAPCO RENEWAL [X]

HURLEY 15

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

* Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
E-Mail: sphughes@hghpa.com
WRITER'S DIRECT: 843-522-2414

VIA US MAIL
June 14, 2017

Western World Insurance Group
300 Kimball Drive, Suite 300
Parsippany, NJ 07054

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.

| | |
|---|---|
| Civil Action No.: | 2016-CP-10-03783 |
| Pending: | Court of Common Pleas, Charleston County, SC |
| Project Name: | The Retreat at Charleston National Country Club, National Drive, Mt. Pleasant, SC 29466 |
| Your Insured: | WS Contractors, LLC |
| Liability Carrier: | Western World Insurance Group |
| Our File No.: | 11981 SPH |

To Whom It May Concern:

This firm has been retained to represent the interests of Builders FirstSource-Southeast Group, LLC, in connection with the defense of its interests against those claims asserted, in the captioned action, by Amended Complaint of the Plaintiffs, The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime. By that action, the Plaintiffs have sought recovery of damages allegedly occasioned by deficiencies in the design, development, construction, and/or component materials of The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, as asserted by the Plaintiffs, include damages purportedly relating to alleged defects in framing, inclusive of the installation of windows and doors at all or a portion of the project. A review of the relevant subcontract agreements reveals that your insured, WS Contractors, LLC, was responsible for performing this work.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and WS Contractors, LLC, as "Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for ongoing and completed operations, under any comprehensive general liability policy or policies issued in favor of WS Contractors, LLC in connection with its services at The Retreat at Charleston National Country Club project. The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreements further required that WS Contractors, LLC to indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

Moreover, it is my understanding that the relevant policies issued in favor of WS Contractors, LLC in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured thereunder. Those policies include (perhaps among others), the following:

<u>Western World Insurance Group</u>

Policy # - NPP1396038
Effective November 20, 2014 through November 20, 2015

Policy # - NPP1367611
Effective November 20, 2013 through November 20, 2014

Policy # - NPP1324654
Effective November 20, 2011 through November 20, 2013

Please consider this correspondence as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that WS Contractors, LLC defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance of the work by WS Contractors, LLC, at The Retreat at Charleston National Country Club townhome/condominium project, specifically to include claims relating to and/or arising out of the acts and/or omissions of WS Contractors, LLC. Additionally, please consider this as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that all insurers of WS Contractors, LLC, from the date of the subcontract agreements between Builders FirstSource-Southeast Group, LLC, as "Contractor", and WS Contractors, LLC as "Subcontractor" (dated December 31, 2009 and September 24, 2012), whether or not such insurers are identified hereinabove, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as an additional insured, against those claims asserted in the above referenced litigation. Copies

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

of the referenced Subcontracts are enclosed herewith, together with the related Certificates of Insurance.

In the event that this correspondence has failed to reach the proper person or entity, I would appreciate your cooperation in forwarding this correspondence to such appropriate department or person within Western World Insurance Group, for responsive action. Please contact me upon your receipt of this demand, so that we may coordinate the participation of Western World Insurance Group in providing a defense and indemnity in favor of Builders FirstSource-Southeast Group, LLC in the captioned litigation.

Yours truly,

HOWELL, GIBSON AND HUGHES, P.A.

Stephen P. Hughes

SPH/hw

Enclosure

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

## Sells, Leslie Wright

**From:** Greg Risco
**Sent:** 6/23/2017 12:16 PM
**To:** Stephen P. Hughes
**CC:**
**BCC:**

**Attachments:**

**Priority:** Normal
**Request:** None
**Security:** Normal
**Deliver After** 0 days(s)
**Subject:** The Retreat at Charleston Natl CC Your Client: Builders FirstSource Y# 11981 SPH Our Insd: Hurley Services O# 132272

Good Afternoon Stephen:

Western World Insurance Company, as the commercial general liability insurance carrier for Hurley Services LLC, acknowledges receipt of your tender letter dated June 14, 2017. Your letter is our first notice of any incident. Kindly provide a copy of the following documents:

1) Copy of the original & amended S&C

2) Copy of the third party S&C filed against our insured

3) HO matrix

4) Copy of the contracts &/or invoices between our mutual clients

5) Tract & lot numbers that correlate the addresses in the complaint with the tract numbers in the subcontracts

6) Identify damages implicating W & S's work

7) Copy of the defect list & cost of repair estimates

8) Copy of any expert reports generated to date

Please note this is a separate request & file as I previously have spoken to you about W&S Contractors who is also involved in this matter.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

Your immediate attention in providing these specifics will be greatly appreciated. Thank you!

Image

**Greg Risco**
**Western World Claims | Claims Consultant**
***Western World Insurance Group***
**P: +1 (201) 847-2801**
g.risco@westernworld.com <mailto:g.risco@westernworld.com>
www.westernworld.com

This communication and any attachment thereto may contain confidential and proprietary material of Western World Insurance Group or others, the unauthorized disclosure of which to third parties may cause permanent and irremediable damage.
If you believe you received this communication in error, please contact the sender and delete it from any computer and other electronic devices on which it may have been stored. Thank you.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

*Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
WRITER'S E-Mail: wcox@hghpa.com
PARALEGAL'S E-Mail: bgiles@hghpa.com
WRITER'S DIRECT: 843-522-2413

June 28, 2017

VIA EMAIL ONLY

Mr. Greg Risco
Western World Insurance
300 Kimball Drive, Suite 300
Parsippany, NJ 07054

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
File No: 11981 SPH
Civil Action: 2016-CP-10-03783
Your Insured: Hurley Services, LLC

Dear Mr. Risco:

I am responding to your email dated June 23, 2017 requesting documents relating to Western World Insurance Company's insured Hurley Services, LLC and the above referenced matter.

Attached hereto are the summons and complaint and the subcontract between Builders FirstSource and Hurley Services, LLC. Additionally, in the subcontract attachments are the certificates of insurance provided from Hurley Services to Builders FirstSource for the underlying project.

We are not in possession of a homeowner's matrix at this time, but will provide one once we obtain relevant information.

Additionally, we are not in possession of any documents from the Plaintiffs in this matter and will provide them as the information becomes available to us.

Should you have any question or comment as to any matters set forth herein, please feel free to contact me at your convenience.

Sincerely,

HOWELL, GIBSON AND HUGHES, P.A

s/Witt

William H. Cox, III

WHC/whc

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

## Reception

**Subject:** FW: Retreat at Charleston Natl vs. Builders FirstSource & Hurley Services LLC WW# 132272

**PM Message ID:** 404092

**From:** Greg Risco [mailto:g.risco@westernworld.com]
**Sent:** Monday, August 07, 2017 8:33 AM
**To:** Witt Cox
**Subject:** Retreat at Charleston Natl vs. Builders FirstSource & Hurley Services LLC WW# 132272

Good Morning Witt:

In follow up to my prior request, please provide the following:

1) Copy of the 3rd party S & C filed against my insured & proof ofcservice if executed

2) HO matrix

3) Copy of Hurley invoices for work performed

4) Tract & lot numbers that correlate the addresses I the complaint with the tract numbers in the subcontracts

5) Identify damages implicating Hurley's work

6) Copy of the defect list & cost of repair estimates

7) Copy of any expert reports generated to date

We have been unable to locate the insured & my information is that he left several years ago & returned to Brazil. Does Builders FirstSource have their own insurance that is providing coverage for this loss? Please advise on all of the above. Thank you!

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Image

**Greg Risco**
**Western World Claims | Claims Consultant**
***Western World Insurance Group***
**P: +1 (201) 847-2801**
g.risco@westernworld.com <mailto:g.risco@westernworld.com>
www.westernworld.com

This communication and any attachment thereto may contain confidential and proprietary material of Western World Insurance Group or others, the unauthorized disclosure of which to third parties may cause permanent and irremediable damage.
If you believe you received this communication in error, please contact the sender and delete it from any computer and other electronic devices on which it may have been stored. Thank you.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

*Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
WRITER'S E-Mail: wcox@hghpa.com
PARALEGAL'S E-Mail: bgiles@hghpa.com
WRITER'S DIRECT: 843-522-2413

August 7, 2017

VIA EMAIL ONLY

Mr. Greg Risco
Western World Insurance
300 Kimball Drive, Suite 300
Parsippany, NJ 07054

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
File No: 11981 SPH
Civil Action: 2016-CP-10-03783
Your Insured: Hurley Services, LLC

Dear Greg:

I am responding to your email dated August 7, 2017 requesting documents relating to Western World Insurance Company's insured Hurley Services, LLC and the above referenced matter.

Attached hereto is Builders FirstSource's third-party summons and complaint in the above referenced matter. Also attached is a list of the street addresses provided by Plaintiffs' counsel for the above referenced matter.

We are not in possession of any documents from the Plaintiffs (homeowner's matrix, defect list, cost of repair estimates, expert reports, etc.) in this matter, but will provide them as the information becomes available to us.

If you will recall, the Plaintiffs have sought recovery of damages allegedly occasioned by deficiencies in the design, development, construction, and/or component materials of The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, as asserted by the Plaintiffs, include damages purportedly relating to alleged defects in framing, inclusive of the installation of windows and doors at all or a portion of the project. A review of the relevant subcontract agreements

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

reveals that your insured, Hurley Services, Inc., was responsible for performing this work.

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Hurley Services, Inc., as "Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for ongoing and completed operations, under any comprehensive general liability policy or policies issued in favor of Hurley Services, Inc. in connection with its services at The Retreat at Charleston National Country Club project.

The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreements further required that Hurley Services, Inc. indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

Moreover, it is my understanding that the relevant policies issued in favor of Hurley Services, Inc. in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured thereunder. Those policies include (perhaps among others), the following:

<u>Western World Insurance Company</u>
Policy# NPP 1379743
Effective 05/15/2014 - 05/15/2015

Policy# NPP 1354747
Effective 05/15/2013 - 05/15/2014

Policy# NPP 1334835
Effective 05/15/2012 - 05/15/2013

Policy# HIHCZ
Effective 05/15/2012 - 05/15/2013

Please consider this correspondence as a reminder of our formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that Hurley Services, Inc. defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance of the work by Hurley Services, Inc., at The Retreat at Charleston National Country Club townhome/condominium project, specifically to include claims relating to and/or arising out of the acts and/or omissions of Hurley Services, Inc.. Additionally, please consider this as a reiteration of our formal demand, on behalf of Builders FirstSource-Southeast

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Group, LLC, that all insurers of Hurley Services, Inc., from the date of the subcontract agreements between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Hurley Services, Inc. as "Subcontractor" (dated December 18, 2014), whether or not such insurers are identified hereinabove, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as an additional insured, against those claims asserted in the above referenced litigation. Copies of the referenced Subcontracts are enclosed herewith, together with the related Certificates of Insurance.

Should you have any question or comment as to any matters set forth herein, please feel free to contact me at your convenience.

Sincerely,

HOWELL, GIBSON AND HUGHES, P.A

s/Witt

William H. Cox, III

WHC/whc

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Hart, Quinn K.**

**From:** Greg Risco
**Sent:** 8/9/2017 08:22 AM
**To:** Witt Cox
**CC:** Cece A Boyne; Stephen P. Hughes
**BCC:**

**Attachments:**

**Priority:** Normal
**Request:** None
**Security:** Normal
**Deliver After** 0 days(s)
**Subject:** RE: {Matter No.[11981 SPH]}{Retreat at Charleston National vs Builders FirstSource}

Good Morning Witt:

Has the 3rd party complaint been served on Hurley Services yet? If so, please provide proof of service.

The subcontract agreements provided are not job specific. Do you have any invoices or other documents to indicate which units Hurley worked on?

Please advise. Thank you for your continued assistance with this matter

Image

**Greg Risco**
**Western World Claims | Claims Consultant**
***Western World Insurance Group***
**P: +1 (201) 847-2801**
g.risco@westernworld.com <mailto:g.risco@westernworld.com>
www.westernworld.com

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

* Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
E-Mail: sphughes@hghpa.com
WRITER'S DIRECT: 843-522-2414

**BY PERSONAL SERVICE**
August 9, 2017

Giovanni Mendes
Hurley Services, Inc.

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
Civil Action No.: 2016-CP-10-03783
Pending: Court of Common Pleas, Charleston County, SC
Project Name: The Retreat at Charleston National Country Club, National Drive, Mt. Pleasant, SC 29466
Our File No: 11981 SPH

To Whom It May Concern:

This firm has been retained to represent the interests of Builders FirstSource-Southeast Group, LLC, in connection with the defense of its interests against those claims asserted, in the captioned action, by Amended Complaint of the Plaintiffs, The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime. By that action, the Plaintiffs have sought recovery of damages allegedly occasioned by purported deficiencies in the design, development, construction, and/or component materials of structures within The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, claimed by the Plaintiffs, include those purportedly relating to alleged improper installation of framing, including installation of windows and doors, during original construction. A review of the relevant subcontract agreements reveals Hurley Services, Inc. was responsible for performing this work.

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Hurley Services, Inc. as

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

"Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for completed operations, under any comprehensive general liability policy or policies issued in favor of Hurley Services, Inc., in connection with its services at the subject premises. The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreement further required that Hurley Services, Inc. indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

It is my understanding that the relevant policies issued in favor of Hurley Services, Inc. in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured. Those policies include (perhaps among others), the following:

Western World Insurance Company

Policy# NPP 1379743
Effective 05/15/2014 - 05/15/2015

Policy# NPP 1354747
Effective 05/15/2013 - 05/15/2014

Policy# NPP 1334835
Effective 05/15/2012 - 05/15/2013

Policy# HIHCZ
Effective 05/15/2012 - 05/15/2013

Please consider this correspondence as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that Hurley Services, defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance in The Retreat at Charleston National Country Club structures, specifically to include claims relating to and/or arising out of the acts and/or omissions of Hurley Services, Inc.. Additionally, please consider this as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that all insurers of Hurley Services, Inc., from the date of the subcontract agreement with Builders FirstSource-Southeast Group, LLC, to the present, whether noted hereinabove or not, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as an additional insured, against those claims asserted in the above captioned action.

Please advise those insurance companies referenced hereinabove, as well as any other carriers potentially providing coverage in favor of Hurley Services, Inc., of the within demand. In the event, of course, that you have any question or

comment as to any matter addressed within this correspondence, please feel free to contact me.

Yours truly,

HOWELL, GIBSON AND HUGHES, P.A.

Stephen P. Hughes

Stephen P. Hughes

SPH/hw

Enclosure

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Hart, Quinn K.**

**From:** Greg Risco
**Sent:** 9/21/2017 09:44 AM
**To:** Witt Cox
**CC:** Cece A Boyne; Stephen P. Hughes
**BCC:**

**Attachments:**

**Priority:** Normal
**Request:** None
**Security:** Normal
**Deliver After** 0 days(s)
**Subject:** FW: {Matter No.[11981 SPH]}{Retreat at Charleston National vs Builders FirstSource}

Good Morning Witt:

Just another gentle reminder that I am awaiting a reply to my inquiries of 8/9 that are below. Thank you!

Image

**Greg Risco**
**Western World Claims | Claims Consultant**
***Western World Insurance Group***
**P: +1 (201) 847-2801**
g.risco@westernworld.com <mailto:g.risco@westernworld.com>
www.westernworld.com

**From:** Greg Risco
**Sent:** Monday, September 11, 2017 9:31 AM
**To:** 'Witt Cox' <WCox@hghpa.com>
**Cc:** Cece A Boyne <caboyne@hghpa.com>; Stephen P. Hughes <SPHughes@hghpa.com>
**Subject:** FW: {Matter No.[11981 SPH]}{Retreat at Charleston National vs Builders FirstSource}

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Hart, Quinn K.**

**From:** Witt Cox
**Sent:** 10/31/2017 10:27 AM
**To:** g.risco@westernworld.com
**CC:** Cece A Boyne; Stephen P. Hughes
**BCC:**

**Attachments:** 452118.PDF

**Priority:** Normal
**Request:** None
**Security:** Normal
**Deliver After** 0 days(s)
**Subject:** {Matter No.[11981 SPH]}{Retreat at Charleston National vs Builders FirstSource}

Greg,

Attached hereto is an Order For Service By Publication upon your insured, Hurley Services, LLC.

I will update you the same once service has been perfected.

Best,

Witt Cox

Howell, Gibson and Hughes, P.A.

P.O. Box 40

Beaufort, SC 29901

843-522-2413

wcox@hghpa.com <mailto:wcox@hghpa.com>

Good Morning Witt:

Just a gentle reminder that I am awaiting a reply to my inquiries of 8/9 that are below. Thank you!

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

*Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
WRITER'S E-Mail: wcox@hghpa.com
PARALEGAL'S E-Mail: bgiles@hghpa.com
WRITER'S DIRECT: 843-522-2413

November 27, 2017

VIA EMAIL ONLY

Mr. Greg Risco
Western World Insurance
300 Kimball Drive, Suite 300
Parsippany, NJ 07054

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
File No: 11981 SPH
Civil Action: 2016-CP-10-03783
Your Insured: Hurley Services, LLC

Dear Mr. Risco:

This firm has been retained to represent the interests of Builders FirstSource-Southeast Group, LLC, in connection with the defense of its interests against those claims asserted, in the captioned action, by Amended Complaint of the Plaintiffs, The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime. By that action, the Plaintiffs have sought recovery of damages allegedly occasioned by purported deficiencies in the design, development, construction, and/or component materials of structures within The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, claimed by the Plaintiffs, include those purportedly relating to alleged improper installation of framing, including installation of windows and doors, during original construction. A review of the relevant subcontract agreements reveals Hurley Services, Inc. was responsible for performing this work.

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Hurley Services, LLC as "Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for completed operations, under any comprehensive general liability policy or policies issued in favor of Hurley

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Services, LLC, in connection with its services at the subject premises. The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreement further required that Hurley Services, LLC indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

It is my understanding that the relevant policies issued in favor of Hurley Services, LLC in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured. Those policies include (perhaps among others), the following:

Western World Insurance Company

Policy# NPP 1379743
Effective 05/15/2014 - 05/15/2015

Policy# NPP 1354747
Effective 05/15/2013 - 05/15/2014

Policy# NPP 1334835
Effective 05/15/2012 - 05/15/2013

Policy# HIHCZ
Effective 05/15/2012 - 05/15/2013

Please consider this correspondence a reiteration of our formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that Hurley Services, defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance in The Retreat at Charleston National Country Club structures, specifically to include claims relating to and/or arising out of the acts and/or omissions of Hurley Services, LLC. Additionally, please consider this as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that all insurers of Hurley Services, LLC, from the date of the subcontract agreement with Builders FirstSource-Southeast Group, LLC, to the present, whether noted hereinabove or not, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as an additional insured, against those claims asserted in the above captioned action.

Enclosed herewith is a copy of the Affidavit of Publication for The Post and Courier in which we served notice by publication against your insured Hurley Services, LLC.

In the event, of course, that you have any question or comment as to any matter addressed within this correspondence, please feel free to contact me.

Sincerely,

HOWELL, GIBSON AND HUGHES, P.A

s/Witt

William H. Cox, III

WHC/whc

Enclosures

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

*Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
WRITER'S E-Mail: wcox@hghpa.com
PARALEGAL'S E-Mail: bgiles@hghpa.com
WRITER'S DIRECT: 843-522-2413

November 27, 2017

Mr. Greg Risco
Western World Insurance
300 Kimball Drive, Suite 300
Parsippany, NJ 07054

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
Civil Action No.: 2016-CP-10-03783
Pending: Court of Common Pleas, County, SC
Project Name: The Retreat at Charleston National Country Club, National Drive, Mt. Pleasant, SC 29466
Your Insured: WS Contractors, LLC
Liability Carrier: Western World Insurance Group
Our File No.: 11981 SPH

Dear Mr. Risco:

This firm has been retained to represent the interests of Builders FirstSource-Southeast Group, LLC, in connection with the defense of its interests against those claims asserted, in the captioned action, by Amended Complaint of the Plaintiffs, The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime. By that action, the Plaintiffs have sought recovery of damages allegedly occasioned by deficiencies in the design, development, construction, and/or component materials of The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, as asserted by the Plaintiffs, include damages purportedly relating to alleged defects in framing, inclusive of the installation of windows and doors at all or a portion of the project. A review of the relevant subcontract agreements

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

reveals that your insured, WS Contractors, LLC, was responsible for performing this work.

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and WS Contractors, LLC, as "Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for ongoing and completed operations, under any comprehensive general liability policy or policies issued in favor of WS Contractors, LLC in connection with its services at The Retreat at Charleston National Country Club project. The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreements further required that WS Contractors, LLC to indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

Moreover, it is my understanding that the relevant policies issued in favor of WS Contractors, LLC in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured thereunder. Those policies include (perhaps among others), the following:

<u>Western World Insurance Group</u>

Policy # - NPP1396038
Effective November 20, 2014 through November 20, 2015

Policy # - NPP1367611
Effective November 20, 2013 through November 20, 2014

Policy # - NPP1324654
Effective November 20, 2011 through November 20, 2013

Please consider this correspondence as a reiteration of our formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that WS Contractors, LLC defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance of the work by WS Contractors, LLC, at The Retreat at Charleston National Country Club townhome/condominium project, specifically to include claims relating to and/or arising out of the acts and/or omissions of WS Contractors, LLC. Additionally, please consider this as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that all insurers of WS Contractors, LLC, from the date of the subcontract agreements between Builders FirstSource-Southeast Group, LLC, as "Contractor", and WS Contractors, LLC as "Subcontractor" (dated December 31, 2009 and September 24, 2012), whether or not such insurers are identified hereinabove, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

an additional insured, against those claims asserted in the above referenced litigation. Copies of the referenced Subcontracts are enclosed herewith, together with the related Certificates of Insurance.

Please contact me upon your receipt of this demand, so that we may coordinate the participation of Western World Insurance Group in providing a defense and indemnity in favor of Builders FirstSource-Southeast Group, LLC in the captioned litigation.

Yours truly,

HOWELL, GIBSON AND HUGHES, P.A.

s/Witt

William H. Cox, III

WHC/whc

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

HOWELL, GIBSON AND HUGHES, P.A.
ATTORNEYS AT LAW
Post Office Box 40
Beaufort, South Carolina 29901-0040
www.hghpa.com

STEPHEN P. HUGHES
PATRICK M. HIGGINS *
ROBERT W. ACHURCH III *
DAVID S. BLACK
MARY BASS LOHR
THOMAS A. BENDLE, JR.

MATT WILLIAMS
WILLIAM H. COX, III

JAMES S. GIBSON, JR. *
Of Counsel

*Certified Mediator

25 RUE DU BOIS
LADY'S ISLAND
BEAUFORT, SOUTH CAROLINA 29907

TELEPHONE: 843 – 522-2400
FAX NUMBER: 843 – 522-2429
WRITER'S E-Mail: wcox@hghpa.com
PARALEGAL'S E-Mail: bgiles@hghpa.com
WRITER'S DIRECT: 843-522-2413

May 10, 2018

VIA EMAIL ONLY

Mr. Greg Risco
Western World Insurance
300 Kimball Drive, Suite 300
Parsippany, NJ 07054

Re: The Retreat at Charleston National Country Club Home Owners Association, Inc., et al vs. Winston Carlyle Charleston National, LLC, Builders FirstSource-Southeast Group, LLC, etc.
File No: 11981 SPH
Civil Action: 2016-CP-10-03783
Your Insured: Hurley Services, LLC

Dear Mr. Risco:

We have exchanged correspondence several times regarding our demand for defense and indemnity pursuant to our status as an additional insured of Hurley Serviecs, LLC in the above reference matter.

As you are aware we have been retained to represent the interests of Builders FirstSource-Southeast Group, LLC, in connection with the defense of its interests against those claims asserted, in the captioned action, by Amended Complaint of the Plaintiffs, The Retreat at Charleston National Country Club Home Owners Association, Inc. and The Retreat at Charleston National Country Club Horizontal Property Regime. By that action, the Plaintiffs have sought recovery of damages allegedly occasioned by purported deficiencies in the design, development, construction, and/or component materials of structures within The Retreat at Charleston National Country Club, townhome/condominium project, in Charleston County, South Carolina. Damages, claimed by the Plaintiffs, include those purportedly relating to alleged improper installation of framing, including installation of windows and doors, during original construction. A review of the relevant subcontract agreements reveals Hurley Services, Inc. was responsible for performing this work.

The relevant subcontract agreements, as executed between Builders FirstSource-Southeast Group, LLC, as "Contractor", and Hurley Services, LLC as

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

"Subcontractor", required that Builders FirstSource-Southeast Group, LLC be designated as an additional insured, for completed operations, under any comprehensive general liability policy or policies issued in favor of Hurley Services, LLC, in connection with its services at the subject premises. The subcontract agreements further required that coverage afforded to Builders FirstSource-Southeast Group, LLC, as an additional insured, be primary for any claim associated with, arising out of, or in any way related to, the work performed at The Retreat at Charleston National Country Club. The subcontract agreement further required that Hurley Services, LLC indemnify and hold harmless Builders FirstSource-Southeast Group, LLC against claims arising out of the subcontractor's acts or omissions.

It is my understanding that the relevant policies issued in favor of Hurley Services, LLC in fact identified Builders FirstSource-Southeast Group, LLC as an additional insured. Those policies include (perhaps among others), the following:

Western World Insurance Company

Policy# NPP 1379743
Effective 05/15/2014 - 05/15/2015

Policy# NPP 1354747
Effective 05/15/2013 - 05/15/2014

Policy# NPP 1334835
Effective 05/15/2012 - 05/15/2013

Policy# HIHCZ
Effective 05/15/2012 - 05/15/2013

Please consider this correspondence a third reiteration of our formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that Hurley Services, defend, indemnify, and hold harmless Builders FirstSource-Southeast Group, LLC from and against any and all liability, loss, or damage arising out of defects and/or deficiencies in performance in The Retreat at Charleston National Country Club structures, specifically to include claims relating to and/or arising out of the acts and/or omissions of Hurley Services, LLC. Additionally, please consider this as a formal demand, on behalf of Builders FirstSource-Southeast Group, LLC, that all insurers of Hurley Services, LLC, from the date of the subcontract agreement with Builders FirstSource-Southeast Group, LLC, to the present, whether noted hereinabove or not, undertake the defense and indemnification of Builders FirstSource-Southeast Group, LLC, as an additional insured, against those claims asserted in the above captioned action.

In the event, of course, that you have any question or comment as to any matter addressed within this correspondence, please feel free to contact me.

Sincerely,

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

HOWELL, GIBSON AND HUGHES, P.A

s/Witt

William H. Cox, III

WHC/whc

Enclosures

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**Hart, Quinn K.**

**From:** Witt Cox
**Sent:** 4/23/2019 11:14 AM
**To:** Greg Risco
**CC:**
**BCC:**

**Attachments:** 467646.docx

**Priority:** Normal
**Request:** None
**Security:** Normal
**Deliver After** 0 days(s)
**Subject:** Claim #132227 {Matter No.[11981 SPH]}{Retreat at Charleston National vs Builders FirstSource}

Greg,

I hope you are doing well. In reviewing this file, I noticed that you have yet to respond to our demands for defense and indemnity pursuant to our status as an additional insured of WS Contractors in this matter. While I'm sure this was an oversight, please let me know your position with this regard.

Best,

Witt Cox

Howell, Gibson and Hughes, P.A.

P.O. Box 40

Beaufort, SC 29901

843-522-2400

wcox@hghpa.com <mailto:wcox@hghpa.com>

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

*This represents
TCF w/ Greg Rosco
in separate matter but
acknowledged outstanding
demands in Retreat.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | CASE NO. 2016-CP-10-3455 |

SIX FIFTY SIX OWNERS ASSOCIATION, INC. and ROBERT JOHN NUTLEY, **and SYLVIA PLAYER HORRES, both** individually, and on behalf of all others similarly situated,

Plaintiffs,

vs.

WINSOR SOUTH, LLC AND JEFFREY M. THOMAS; SOUTHEASTERN RECAPITALIZATION GROUP, LLC; WCM CONSTRUCTION, LLC; JONATHAN J. THOMAS; AC HEATING AND AIR CONDITIONING SERVICE, INC.; ACME DOORS, INC.; ALPHA OMEGA CONSTRUCTION GROUP, INC.; ATLANTIC CONSTRUCTION SERVICES, INC.; BUCK LUMBER AND BUILDING SUPPLY, INC.; BUILDERS FIRSTSOURCE, INC.; BUILDERS FIRSTSOURCE-ATLANTIC GROUP, LLC; BUILDERS FIRSTSOURCE-FLORIDA, LLC A/K/A BUILDERS FIRSTSOURCE-FLORIDA DESIGN CENTER, LLC; BUILDERS FIRSTSOURCE-SOUTHEAST GROUP, LLC; CHARLOTTE FLOORING, INC.; DIRIA TAWI PAINTING, INC.; EAST COAST WALL SYSTEMS, INC.; FOGEL SERVICES, INC.; G&S HOME REMODELING, LLC; GUARANTEED FRAMING, LLC; J. MORA BRICK & BLOCK MASON, LLC; LAND/SITE SERVICES, INC.; LANDMARK CONSTRUCTION COMPANY, INC.; LUTZEN CONSTRUCTION, INC.; NEW HORIZON SHUTTERS, INC. A/K/A NEW HORIZON SHUTTERS INTERNATIONAL,

**THIRD AMENDED SUMMONS**
(Defective Construction)
(Class Action)
(Jury Trial Demanded)

FILED
2019 JAN -9 AM 11:04
JULIE J. ARMSTRONG
CLERK OF COURT
BY ____

**EXHIBIT C**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

LLC; PJ SANCHEZ MASONRY, LLC; SCREENS PLUS, INC.; SIMONS CONSTRUCTION COMPANY, LLC; STUCCO BY DESIGN, LLC; FINE BUILDERS, LLC; SPEEDTRUSS, INC.; **ARGENTINO JOSE CAMPOS D/B/A** AS CONSTRUCTION; JAVIER MORALES MERINO; NOVAC CONSTRUCTION, INC.; MJG CONSTRUCTION, INC.; ADVANCE PLUMBING, HEATING & AIR, INC.; CAHILL CONTRACTING, LLC; COHEN'S DRYWALL, INC.; BOB PORTER D/B/A CUSTOM INTERIOR CONSTRUCTION; RB'S TRIM, INC.; SHARON'S PAINTING, LLC; DAVIS TILE; TIMOTHY MITCHELL; ELECTRICAL DESIGN & CONSTRUCTION, INC.; **HURLEY SERVICES, LLC; CHARLESTON EXTERIORS LLC; JORGE DIAZ A/K/A JORGE LOUIS DIAZ PAZ; SAN LUIS CONSTRUCTION, INC. N/K/A ROOFING AMERICA METAL FABRICATIONS, LLC; ROGERIO DOS SANTOS D/B/A ROGERIO SANTOS CONSTRUCTION; FABIO OLIVIERA D/B/A FOUR SEASON SIDING; SUNRISE SIDING; GARCIA ROOFING, LLC.; ESPINO ROOFING, LLC; MIGUEL PAINTING, LLC; HORACIO JASSO; STANDARD PRECAST WALLS, LLC; ALFONSO RODRIGUEZ A/K/A ALFONSO RODRIGUEZ, JR. D/B/A AR SERVICES CO.; ALFONSO RODRIGUEZ VASQUEZ A/K/A ALFONSO RODRIGUEZ, SR.; AND JOHN DOE 55 -75,**

Defendants.

YOU ARE HEREBY SUMMONED and required to answer the Third Amended Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to said Third Amended Complaint upon the subscriber at his office at 415 Mill Street, Mt. Pleasant, South

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Carolina 29464, within thirty (30) days after the service hereof, exclusive of the day of such service, and if you fail to answer within the prescribed time, a judgment by default will be rendered against you for the remedy requested in the attached Third Amended Complaint plus interest and costs.

Respectfully submitted,

JUSTIN O'TOOLE LUCEY, P.A.

By: ______________________

Justin O'Toole Lucey
Joshua F. Evans
James L. Floyd, III ("Lee")
Collin H. Fuller
415 Mill Street
Post Office Box 806
Mount Pleasant, SC 29465-0806
(843) 849-8400 phone
(843) 849-8406 fax
jlucey@lucey-law.com
jevans@lucey-law.com
lfloyd@lucey-law.com
cfuller@lucey-law.com

1/7, 2019
Charleston, South Carolina

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO. 2016-CP-10-3455 |

SIX FIFTY SIX OWNERS ASSOCIATION, INC., and ROBERT JOHN NUTLEY **and SYLVIA PLAYER HORRES, both** individually, and on behalf of all others similarly situated,

Plaintiffs,

vs.

WINSOR SOUTH, LLC AND JEFFREY M. THOMAS; SOUTHEASTERN RECAPITALIZATION GROUP, LLC; WCM CONSTRUCTION, LLC; JONATHAN J. THOMAS; AC HEATING AND AIR CONDITIONING SERVICE, INC.; ACME DOORS, INC.; ALPHA OMEGA CONSTRUCTION GROUP, INC.; ATLANTIC CONSTRUCTION SERVICES, INC.; BUCK LUMBER AND BUILDING SUPPLY, INC.; BUILDERS FIRSTSOURCE, INC.; BUILDERS FIRSTSOURCE-ATLANTIC GROUP, LLC; BUILDERS FIRSTSOURCE-FLORIDA, LLC A/K/A BUILDERS FIRSTSOURCE-FLORIDA DESIGN CENTER, LLC; BUILDERS FIRSTSOURCE-SOUTHEAST GROUP, LLC; CHARLOTTE FLOORING, INC.; DIRIA TAWI PAINTING, INC.; EAST COAST WALL SYSTEMS, INC.; FOGEL SERVICES, INC.; G&S HOME REMODELING, LLC; GUARANTEED FRAMING, LLC; J. MORA BRICK & BLOCK MASON, LLC; LAND/SITE SERVICES, INC.; LANDMARK CONSTRUCTION COMPANY, INC.; LUTZEN CONSTRUCTION, INC.; NEW HORIZON SHUTTERS, INC. A/K/A NEW HORIZON SHUTTERS INTERNATIONAL,

**THIRD AMENDED COMPLAINT**
(Defective Construction)
(Class Action)
(Jury Trial Demanded)

FILED
2019 JAN -9 AM 11:05
JULIE J. ARMSTRONG
CLERK OF COURT
BY_____

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

LLC; PJ SANCHEZ MASONRY, LLC; SCREENS PLUS, INC.; SIMONS CONSTRUCTION COMPANY, LLC; STUCCO BY DESIGN, LLC; FINE BUILDERS, LLC; SPEEDTRUSS, INC.; **ARGENTINO JOSE CAMPOS D/B/A** AS CONSTRUCTION; JAVIER MORALES MERINO; NOVAC CONSTRUCTION, INC.; MJG CONSTRUCTION, INC.; ADVANCE PLUMBING, HEATING & AIR, INC.; CAHILL CONTRACTING, LLC; COHEN'S DRYWALL, INC.; BOB PORTER D/B/A CUSTOM INTERIOR CONSTRUCTION; RB'S TRIM, INC.; SHARON'S PAINTING, LLC; DAVIS TILE; TIMOTHY MITCHELL; ELECTRICAL DESIGN & CONSTRUCTION, INC.; **HURLEY SERVICES, LLC; CHARLESTON EXTERIORS LLC; JORGE DIAZ A/K/A JORGE LOUIS DIAZ PAZ; SAN LUIS CONSTRUCTION, INC. N/K/A ROOFING AMERICA METAL FABRICATIONS, LLC; ROGERIO DOS SANTOS D/B/A ROGERIO SANTOS CONSTRUCTION; FABIO OLIVIERA D/B/A FOUR SEASON SIDING; SUNRISE SIDING, LLC; GARCIA ROOFING, LLC.; ESPINO ROOFING, LLC; MIGUEL PAINTING, LLC; HORACIO JASSO; STANDARD PRECAST WALLS, LLC; ALFONSO RODRIGUEZ A/K/A ALFONSO RODRIGUEZ, JR. D/B/A AR SERVICES CO.; ALFONSO RODRIGUEZ VASQUEZ A/K/A ALFONSO RODRIGUEZ, SR.; AND JOHN DOE 55 -75,**

Defendants.

---

The Plaintiffs, Six Fifty Six Owners Association, Inc., Robert John Nutley, individually, and on behalf of all others similarly situated, **and Sylvia Player Horres, individually, and on**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**behalf of all others similarly situated,** complaining of the Defendants named herein, would respectfully allege and show the Court as follows:

**THE PARTIES**

1. Plaintiff Six Fifty Six Owners Association, Inc. (hereinafter "Association"), is a non-profit corporation organized and existing under the laws of the State of South Carolina.

2. The Association is the property owners association for Six Fifty Six Horizontal Property Regime.

3. The Six Fifty Six Horizontal Property Regime (hereinafter "656 Coleman Townhomes") is a Horizontal Property Regime which exists by virtue of a Master Deed dated March 19, 2007, and recorded on March 20, 2007, in the RMC Office of Charleston County, SC, in Book E619, Page 738.

4. 656 Coleman Townhomes consists of fifty-two (52) townhomes in twelve (12) buildings and related common elements. Construction began in 2006 and the final Certificate of Occupancy was issued on June 18, 2014. The Developers turned over control of the Association to the homeowners **on March 22, 2016**.

5. By virtue of governing documents and the South Carolina Horizontal Property Regime Act, S.C. Code §§ 27-31-10, *et. seq.*, the Association is charged with certain duties, powers, rights and authority in connection with 656 Coleman Townhomes.

6. By virtue of the Master Deed and/or Bylaws, the Association is charged with, *inter alia*, the management and administration of 656 Coleman Townhomes, the investigation, maintenance and repair of 656 Coleman Townhomes' Common Elements and Areas of Responsibility, and has the right and authority to bring this action on behalf of the Association and its members.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

7. The Association duly noticed and convened a Meeting of the Association wherein members of the Association overwhelmingly approved the Association's commencement of this litigation.

8. **The Association is the assignee of the claims of one or more of the homeowners.**

9. Plaintiff Robert John Nutley (hereinafter "Plaintiff Nutley") is a citizen of Charleston County, South Carolina, and is an owner of a townhome **constructed by The Ryland Group, Inc.** within 656 Coleman, more particularly described as 656 Coleman Blvd., Unit 204, Mount Pleasant, South Carolina, 29464.

10. Plaintiff Nutley entered into a contract to purchase the above-described real property on or about March 14, 2014.

11. **Plaintiff Sylvia Player Horres (hereinafter "Plaintiff Horres") is a citizen of Charleston County, South Carolina, and is an owner of a townhome constructed by Winsor South, LLC within 656 Coleman, more particularly described as 656 Coleman Blvd., Unit 602, Mount Pleasant, South Carolina, 29464.**

12. **Plaintiff Horres entered into a contract to purchase the above-described real property on or about May 20, 2014.**

13. By virtue of **their** property ownership in 656 Coleman, Plaintiff Nutley **and Plaintiff Horres** bring this action on behalf of **themselves** and a Proposed Class of other similarly situated property owners. In addition to **their** common ownership interest, Plaintiff Nutley, **Plaintiff Horres,** and the Proposed Class are also members of the Association. Consequently, Plaintiff Nutley **and Plaintiff Horres** fairly and adequately represent the interests of the entire Association membership - as members of the Association, Plaintiff Nutley **and Plaintiff Horres** share common interests with other Association members regarding the resolution of this matter

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

and Plaintiff Nutley **and Plaintiff Horres are** able and committed to prosecuting these common interests.

14.     Defendant Winsor South, LLC, is a limited liability company organized under the laws of the State of South Carolina.  At all times relevant to this action, Winsor South, LLC, was engaged in the business of developing, designing, constructing, repairing and/or selling townhomes in Charleston County, South Carolina.

15.     Upon information and belief, Defendant Jeffrey M. Thomas is an individual residing in Charleston, South Carolina.  At all times relevant to this action, Jeffrey M. Thomas was engaged in the business of developing, designing, constructing, repairing and/or selling townhomes in Charleston County, South Carolina.

16.     Defendants Winsor South, LLC, and Jeffrey M. Thomas were the initial builders of the 656 Coleman Townhomes. **Winsor South, LLC, and Jeffrey M. Thomas constructed buildings 400, 500, and 600 (the "Winsor Buildings")**

17.     Defendant WCM Construction, LLC, is a limited liability company organized under the laws of the State of South Carolina.  At all times relevant to this action, WCM Construction, LLC, was engaged in the business of developing, designing, constructing, repairing and/or selling townhomes in Charleston County, South Carolina.

18.     Upon information and belief, Defendant Jonathan J. Thomas is an individual residing in Middlesex, Massachusetts.  At all times relevant to this action, Defendant Jonathan J. Thomas was engaged in the business of developing, designing, constructing, repairing, and/or selling townhomes in Charleston County, South Carolina

19.     **Jonathan J. Thomas served as the second developer of the 656 Coleman Townhomes.**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

20. Defendant Southeastern Recapitalization Group, LLC, is a limited liability company organized and existing under the laws of the State of South Carolina.

21. Defendant Southeastern Recapitalization purchased **Building 400 and six (6) finished townhomes** from the original Developer, WCB, LLC, pursuant to a Limited Warranty Deed executed on December 31, 2008, and filed with the Charleston County Register of Deeds on December 31, 2008, at Book 0027, Page 504.

22. Upon information and belief, Defendant Southeastern Recapitalization **finished the design and construction of Building 400** and placed new townhouses into the stream of commerce.

23. **WCM Construction served as the general contractor for Southeastern Recapitalization, and completed construction of Building 400.**

24. **The Ryland Group, Inc. (hereinafter "Ryland") is the developer and general contractor that constructed the 35 homes in Buildings 100, 200, 300, 700, 800, 900, 1000, 1100, and 1200 (the "Ryland Buildings").**

25. **This lawsuit involves all 12 buildings that comprise the 656 Coleman Townhomes. Plaintiffs are distinguishing between buildings solely to specify which defendants worked on each set of buildings.**

**Winsor South Subcontractors**

26. Defendant AC Heating and Air Conditioning Service, Inc., formerly identified as John Doe #1 (hereinafter "AC Heating and Air"), is a corporation organized and existing under the laws of the State of South Carolina. Upon information and belief, at all times relevant to this action, AC Heating and Air performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Townhomes, including but not limited to the supply and installation of the HVAC systems and associated components in some or all of the **Winsor Buildings**.

27. Defendant Acme Doors, Inc., formerly identified as John Doe #2 (hereinafter "Acme Doors"), is a corporation organized and existing under the laws of the State of South Carolina. Upon information and belief, at all times relevant to this action, Acme Doors performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the garage doors in some or all of the **Winsor Buildings**.

28. Defendant Atlantic Construction Services, Inc., formerly identified as John Doe #4 (hereinafter "Atlantic Construction"), is a corporation organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Atlantic Construction performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing members, windows, doors, and related components on **Buildings 500 and 600**.

29. Defendant Buck Lumber and Building Supply, Inc., formerly identified as John Doe #5 (hereinafter "Buck Lumber"), is a corporation organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Buck Lumber performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing members, windows, doors, and related components on some or all of the **Winsor Buildings**.

30. Defendant J. Mora Brick & Block Mason, LLC, formerly identified as John Doe #16 (hereinafter "J. Mora Brick"), is a company organized and existing under the laws of the State

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

of South Carolina. At all times relevant to this action, J. Mora Brick performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the masonry veneer, masonry columns, concrete footings, masonry foundations, and related components in some or all of the **Winsor Buildings**.

31.    Defendant G&S Home Remodeling, LLC, formerly identified as John Doe #14 (hereinafter "G&S Home"), is a company organized and existing under the laws of the State of South Carolina. At all times relevant to this action, G&S Home performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the gutters and associated components on some or all of the **Winsor Buildings**.

32.    Defendant Guaranteed Framing, LLC, formerly identified as John Doe #15 (hereinafter "Guaranteed Framing"), is a company organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Guaranteed Framing performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing members, windows, doors, and related components in **Building 400.**

33.    Defendant Landmark Construction Company, Inc., formerly identified as John Doe #18 (hereinafter "Landmark Construction"), is a company organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Landmark Construction performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to performing the site work **for Winsor South.**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

34.     Defendant New Horizon Shutters, Inc. a/k/a New Horizon Shutters International, LLC, formerly identified as John Doe #20 (hereinafter "New Horizon"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, New Horizon performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the shutters on some or all of the **Winsor Buildings**.

35.     Defendant Screens Plus, Inc., formerly identified as John Doe #22 (hereinafter "Screens Plus"), is a company organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Screens Plus performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the screens and related components in some or all of the **Winsor Buildings**.

36.     Defendant Stucco By Design, LLC, formerly identified as John Doe #24 (hereinafter "Stucco By Design"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Stucco By Design performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the stucco, insulation, caulking, sealant, and related components on some or all of the **Winsor Buildings**.

37.     Defendant Fine Builders, LLC, formerly identified as John Doe #25 (hereinafter "Fine Builders"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Fine Builders performed certain work and/or repairs as a sub-subcontractor of Defendant Atlantic Construction at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

limited to the supply and installation of the framing, related components, and other work on **Building 500**.

38. Defendant Speedtruss, Inc., formerly identified as John Doe #26 (hereinafter "Speedtruss"), is a company organized and existing under the laws of the State of New Jersey. At all times relevant to this action, Speedtruss performed certain work and/or repairs as a sub-subcontractor of Defendant Atlantic Construction at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing, related components, and other work on **Building 600.**

39. **Defendant Argentino Jose Campos d/b/a** AS Construction, formerly identified as John Doe #27 **(hereinafter AS Construction)**, is an **individual residing in Goose Creek,** South Carolina. At all times relevant to this action, AS Construction performed certain work and/or repairs as a sub-subcontractor of Defendant Atlantic Construction at of the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing, related components, and other work on **Building 600**.

40. Upon Information and belief, Defendant Javier Morales Merino, formerly identified as John Doe #28, is a citizen and resident of the State of South Carolina. At all times relevant to this action, Defendant Merino installed certain stucco cladding and provided other materials and/or performed other work on some or all of the **Winsor Buildings**.

41. Upon information and belief, Defendant MJG Construction, Inc., formerly identified as John Doe #30 (hereinafter "MJG"), is an entity organized and existing under the laws of the State of Texas. At all times relevant to this action, Defendant MJG performed certain concrete work and/or repairs on some or all of the **Winsor Buildings**.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

42. Defendant Advance Plumbing, Heating and Air, Inc., formerly identified as John Doe #31 (hereinafter "Advance Plumbing"), is an entity organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Advance Plumbing performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to plumbing work **on the Winsor Buildings**.

43. Defendant Cahill Contracting, LLC, formerly identified as John Doe #33 (hereinafter "Cahill"), is an entity organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Cahill performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to roofing work **on the Winsor Buildings**.

44. Defendant Cohen's Drywall, Inc., formerly identified as John Doe #34 (hereinafter "Cohen's"), is an entity organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Cohen's performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to insulation work **on the Winsor Buildings**.

45. Defendant Bob Porter d/b/a Custom Interior Construction, formerly identified as John Doe #35 (hereinafter "Custom Interior"), is a citizen and resident of the State of South Carolina. At all times relevant to this action, Custom Interior performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to interior trim work **on the Winsor Buildings**.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

46.     Defendant RB's Trim, Inc., formerly identified as John Doe #36 (hereinafter "RB's Trim"), is an entity organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, RB's Trim performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to interior trim work **on the Winsor Buildings**.

47.     Defendant Sharon's Painting and Construction a/k/a Sharon's Painting, LLC, formerly identified as John Doe #37 (hereinafter "Sharon's Painting"), is an entity organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Sharon's Painting performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to paint work **on the Winsor Buildings**.

48.     Defendant Davis Tile, formerly identified as John Doe #38, is an entity organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Davis Tile performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to tile work **on the Winsor Buildings**.

49.     Defendant Timothy Mitchell, formerly identified as John Doe #39 (hereinafter "Mitchell"), is a citizen and resident of the State of South Carolina.  At all times relevant to this action, Mitchell performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to concrete work **on the Winsor Buildings**.

50.     Defendant Electrical Design & Construction, Inc., formerly identified as John Doe #40 (hereinafter "Electrical Design"), is an entity organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Electrical Design performed certain

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to electrical work **on the Winsor Buildings**.

51.    **Defendant Jorge Diaz a/k/a Jorge Louis Diaz Paz, formerly identified as John Doe #43 (hereinafter "Diaz"), upon information and belief, is a citizen and resident of the State of South Carolina.  At all times relevant to this action, Diaz performed certain work and/or repairs as a sub-subcontractor for Defendant Guaranteed Framing at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing members, windows, doors, and related components on Building 400.**

52.    **Defendant San Luis Construction, Inc., n/k/a Roofing America Metal Fabrications, LLC, formerly identified as John Doe #44 (hereinafter "Roofing America"), is, upon information and belief, a limited liability company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Roofing America performed various work and/or repairs as a sub-subcontractor for Defendant Cahill Contracting at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the installation of the roofing and related waterproofing, flashing, and other associated components on some or all of the Winsor Buildings.**

53.    **Defendant Rogerio Dos Santos d/b/a Rogerio Santos Construction, formerly identified as John Doe #45 (hereinafter "Santos Construction"), is, upon information and belief, a person doing business in the State of South Carolina. At all times relevant to this action, Santos Construction performed various work and/or repairs as a sub-subcontractor for Defendant Simons Construction at the 656 Townhomes and/or supplied certain**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the window and door flashing and related components on Building 400.**

**54. Defendant Fabio De Oliviera d/b/a Four Season Siding, formerly identified as John Doe #46 (hereinafter "Four Season Siding"), is, upon information and belief, an person doing business in the State of South Carolina. At all times relevant to this action, Four Season Siding performed various work and/or repairs as a sub-subcontractor for Defendant Simons Construction at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the exterior cladding, siding, exterior trim, and related components on some or all of the Winsor Buildings.**

**55. Defendant Standard Precast Walls, LLC, formerly identified as John Doe #52 (hereinafter "Precast Walls"), is, upon information and belief, a limited liability company organized and existing under the laws of the State of Georgia. At all times relevant to this action, Precast Walls performed various work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the design, manufacture, supply and installation of the precast walls, related sealant joints, waterproofing, flashing, and other associated components on Building 400.**

**Ryland Subcontractors**

56. Defendant Alpha Omega Construction Group, Inc., formerly identified as John Doe #3 (hereinafter "Alpha Omega"), is a corporation organized and existing under the laws of the State of North Carolina. At all times relevant to this action, Alpha Omega performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

used in the construction of the 656 Townhomes, including but not limited to the installation of the roofing and related waterproofing, flashing, and other associated components on some or all of the **Ryland Buildings**.

57.    Defendant Builders FirstSource, Inc., formerly identified as John Doe #6 (hereinafter "Builders FirstSource"), is a corporation organized and existing under the laws of the State of Delaware.  At all times relevant to this action, Builders FirstSource performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the windows and related waterproofing, flashing, and other associated components on some or all of the **Ryland Buildings**.

58.    Defendant Builders FirstSource-Atlantic Group, LLC, formerly identified as John Doe #7 (hereinafter "Builders FirstSource-Atlantic"), is a company organized and existing under the laws of the State of Delaware.  At all times relevant to this action, Builders FirstSource-Atlantic performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the windows and related waterproofing, flashing, and other associated components on some or all of the **Ryland Buildings**.

59.    Defendant Builders FirstSource-Florida, LLC a/k/a Builders FirstSource-Florida Design Center, LLC, formerly identified as John Doe #8 (hereinafter "Builders FirstSource-Florida"), is a company organized and existing under the laws of a State other than South Carolina. At all times relevant to this action, Builders FirstSource-Florida performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

of the windows and related waterproofing, flashing, and other associated components on some or all of the **Ryland Buildings**.

60. Defendant Builders FirstSource-Southeast Group, LLC, formerly identified as John Doe #9 (hereinafter "Builders FirstSource-Southeast"), is a company organized and existing under the laws of the State of Delaware. At all times relevant to this action, Builders FirstSource-Southeast performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the windows and related waterproofing, flashing, and other associated components on some or all of the **Ryland Buildings**.

61. Defendant Charlotte Flooring, Inc., formerly identified as John Doe #10 (hereinafter "Charlotte Flooring"), is a company organized and existing under the laws of the State of North Carolina. At all times relevant to this action, Charlotte Flooring performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the ceramic tile and other associated components on some or all of the **Ryland Buildings**.

62. Defendant Diria Tawi Painting, Inc., formerly identified as John Doe #11 (hereinafter "Diria Tawi"), is a company organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Diria Tawi performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the paint, caulking, and related waterproofing, flashing, and other associated components on some or all of the **Ryland Buildings**.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

63.     Defendant Fogel Services, Inc., formerly identified as John Doe #13 (hereinafter "Fogel Services"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Fogel Services performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes including but not limited to the supply and installation of the HVAC systems and associated components in some or all of the **Ryland Buildings**.

64.     Defendant Land/Site Services, Inc., formerly identified as John Doe #17 (hereinafter "Land/Site Services"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Land/Site Services performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to performing the site work and related components in the construction of the **Ryland Buildings**.

65.     Defendant Lutzen Construction, Inc., formerly identified as John Doe #19 (hereinafter "Lutzen Construction"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, Lutzen Construction performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the foundations, concrete slabs, and other related components in the construction of the **Ryland Buildings**.

66.     Defendant PJ Sanchez Masonry, LLC, formerly identified as John Doe #21 (hereinafter "PJ Sanchez Masonry"), is a company organized and existing under the laws of the State of South Carolina.  At all times relevant to this action, PJ Sanchez Masonry performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

the supply and installation of the masonry veneer, masonry columns, concrete footings, masonry foundations, and related components in some or all of the **Ryland Buildings**.

67. Defendant Novac Construction, Inc., formerly identified as John Doe #29 (hereinafter "Novac Construction"), is a corporation organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Novac Construction performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the framing members, windows, doors, and related components and performed other work on some or all of the **Ryland Buildings**.

68. **Defendant Hurley Services, LLC, formerly identified as John Doe #41 (hereinafter "Hurley Services"), is an entity organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Hurley Services performed certain work and/or repairs as a sub-subcontractor for Defendant Builders First Source at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the windows, doors, and related waterproofing, flashing, and other associated components on some or all of the Ryland Buildings.**

69. **Defendant Charleston Exteriors LLC, formerly identified as John Doe #42 (hereinafter "Charleston Exteriors"), is an entity organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Charleston Exteriors performed certain work and/or repairs as a sub-subcontractor for Defendant Builders First Source at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**of the windows, doors, and related waterproofing, flashing, and other associated components on some or all of the Ryland Buildings.**

70. **Defendant Sunrise Siding, LLC formerly identified as John Doe #47, is, upon information and belief, a limited liability corporation organized in the State of South Carolina. At all times relevant to this action, Sunrise Siding performed various work and/or repairs as a sub-subcontractor for Defendant Simons Construction at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the exterior cladding, siding, exterior trim, and related components on some or all of the Ryland Buildings.**

71. **Defendant Garcia Roofing, LLC, formerly identified as John Doe #48 (hereinafter "Garcia"), is, upon information and belief, a limited liability corporation organized under the laws of the State of South Carolina. At all times relevant to this action, Garcia Roofing, LLC, performed various work and/or repairs as a sub-subcontractor for Defendant Alpha Omega at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the installation of the roofing and related waterproofing, flashing, and other associated components on some or all of the Ryland Buildings.**

72. **Defendant Espino Roofing, LLC, formerly identified as John Doe #49 (hereinafter "Espino"), is, upon information and belief, a limited liability corporation organized under the laws of the State of South Carolina. At all times relevant to this action, Espino performed various work and/or repairs as a sub-subcontractor for Defendant Alpha Omega at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the installation of the**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

**roofing and related waterproofing, flashing, and other associated components on some or all of the Ryland Buildings.**

73. **Defendant Miguel Painting, LLC, formerly identified as John Doe #50 (hereinafter "Miguel"), is, upon information and belief, a limited liability corporation organized under the laws of the State of South Carolina. At all times relevant to this action, Miguel performed various work and/or repairs as a sub-subcontractor for Defendant Diria Tawi at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the paint, caulking, and related waterproofing, flashing, and other associated components on some or all of the Ryland Buildings.**

74. **Defendant Horacio Jasso, formerly identified as John Doe #51 (hereinafter "Jasso"), is, upon information and belief, a citizen of and resident of the State of South Carolina. At all times relevant to this action, Jasso performed various work and/or repairs as a sub-subcontractor for Defendant Diria Tawi at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the paint, caulking, and related waterproofing, flashing, and other associated components on some or all of the Ryland Buildings.**

75. **Defendant Alfonso Rodriguez a/k/a Alfonso Rodriguez, Jr. d/b/a AR Services Co. formerly identified as John Doe #53 (hereinafter "AR Services"), is, upon information and belief, an individual that resides in Orangeburg County and performs HVAC installation in Charleston County, South Carolina. At all times relevant to this action, AR Services performed various work and/or repairs as a subcontractor for Defendant Fogel Services at the 656 Townhomes, including but not limited to the supply and installation of the HVAC systems and associated components in some or all of the Ryland Buildings.**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

76. **Defendant Alfonso Rodriguez Vasquez a/k/a Alfonso Rodriguez, Sr. formerly identified as John Doe #54 (hereinafter "Alfonso Vasquez"), is, upon information and belief, an individual that resides in Dorchester County and performs HVAC installation in Charleston County, South Carolina. At all times relevant to this action, Alfonso Vasquez performed various work and/or repairs as a subcontractor for Defendant Fogel Services at the 656 Townhomes, including but not limited to the supply and installation of the HVAC systems and associated components in some or all of the Ryland Buildings.**

**Dual Provider Subcontractors**

77. Defendant East Coast Wall Systems, Inc., formerly identified as John Doe #12 (hereinafter "East Coast Wall Systems"), is a company organized and existing under the laws of the State of North Carolina. At all times relevant to this action, East Coast Wall Systems performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the drywall, painting, and related waterproofing, flashing, and other associated components on some or all of the homes.

78. Defendant Simons Construction Company, LLC, formerly identified as John Doe #23 (hereinafter "Simons Construction"), is a company organized and existing under the laws of the State of South Carolina. At all times relevant to this action, Simons Construction performed certain work and/or repairs as a subcontractor at the 656 Townhomes and/or supplied certain materials/products used in the construction of the 656 Townhomes, including but not limited to the supply and installation of the exterior cladding, siding, exterior trim, and related components on some or all of the homes.

79. **East Coast Wall Systems and Simons Construction performed work on both the Winsor Buildings and the Ryland Buildings at the project.**

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

80. **John Doe Defendants 55-75 are the designers, subcontractors, suppliers and/or other entities involved in the design, construction, material manufacturing and/or supplying and/or repair of the 656 Coleman Townhomes, whose identity and location are unknown at this time.**

**FACTUAL ALLEGATIONS**

81. This matter arises out of the design, development, construction, repair and sale of the 656 Coleman Townhomes.

82. At the time the Certificates of Occupancy were issued, the 656 Coleman Townhomes contained latent building defects.

83. The latent building defects in combination with fortuitous events, weather, repeated water intrusion, and/or other events have resulted in consequential damage to non-defective building components and other property.

84. A preliminary inspection of 656 Coleman Townhomes evidences failure of one or more components of the exterior building envelopes; water intrusion into and through the exterior building envelope; and resulting consequential damage to non-defective building components. Inspection also reveals failure of other various and sundry building components, with consequential damages resulting there from.

85. Defendants had a duty to design, develop, construct, and repair 656 Coleman Townhomes in a workmanlike manner with suitable materials and free from all defects.

86. The aforementioned deficiencies and consequential damages evidence that Defendants breached their duties to Plaintiffs.

87. The Defendants' acts and omissions have resulted in building deficiencies, consequential damages, and partial loss of use and enjoyment.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

88. Remedying the above-wrongs will result in additional consequential damages and loss of use.

89. As a direct and proximate result of Defendants' violation of their legal duties, Plaintiff and class members have been proximately damaged in an amount to be determined by the trier of fact, and have had to incur reasonable attorney's fees and costs for the retention of experts to determine the damage and the scope of work for repair.

90. Upon information and belief, the water intrusion and resulting consequential damages commenced shortly after completion and have occurred and have been occurring in each and every year since commencement and constitute "occurrences" and "property damage" under the standard and/or typical commercial general liability policies.

**PLAINTIFFS CLASS ACTION ALLEGATIONS**

91. Pursuant to the common law of South Carolina and Rule 23 of the South Carolina Rules of Civil Procedure ("SCRCP"), Plaintiff Nutley **and Plaintiff Horres** bring this action both individually and as a proposed class action against Defendants on behalf of themselves and all other similarly situated persons and entities, who own, per the class definition, a townhome within 656 Coleman Townhomes (hereinafter collectively referred to as the "Class"). The Class is particularly defined as follows:

> All persons and entities that own a condominium within 656 Coleman Townhomes located in the Town of Mt. Pleasant, Charleston County, South Carolina.
>
> Excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants and their legal representatives, assigns and successors of Defendants and Defendants' current or former employees, investors, members, or officers; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

92. **Plaintiff Nutley and Plaintiff Horres will each represent a sub-class, where Plaintiff Nutley represents the Class Members who own homes built by Ryland and its subcontractors, and Plaintiff Horres represents the Class Members who own homes built by Winsor South and its subcontractors.**

93. *Numerosity*: The Class is composed of in excess of fifty (50) persons geographically dispersed throughout the State of South Carolina, the joinder of whom in one action is impractical. **When spouses and co-owners are considered, the Class is expected to be in excess of one hundred members.**

94. *Commonality*: Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include the following:

(a) Whether Defendants negligently designed, developed constructed and/or repaired 656 Coleman Townhomes;
(b) Whether the construction and/or repair of 656 Coleman Townhomes was defective;
(c) Whether Defendants knew or should have known of the original defects;
(d) Whether Defendants have acted or refused to act on grounds generally applicable to the Class;
(e) Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by other members of the Class for repair of their townhomes as well as repair/replacement of other property damage; (ii) temporary repairs and (iii) compensation for loss of use; and,
(f) Whether the Plaintiff and the Class are entitled to prejudgment interest, attorneys' fees and costs from Defendants.

95. *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' wrongful conduct in designing, developing, constructing, repairing, and selling 656 Coleman Townhomes, Defendants' conduct in concealing the defective condition of 656 Coleman Townhomes, and Plaintiffs' and Class Members' purchasing homes containing building defects.

96. *Adequate Representation*: Plaintiff Nutley **and Plaintiff Horres** will fairly and

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class.  Plaintiff Nutley **and Plaintiff Horres** have retained counsel experienced in the prosecution of construction defect claims and complex litigation, including consumer class actions involving product liability and product design defects.

97.     *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court. Additionally, given potential overlapping ownership of some building elements, the class action is the superior mechanism for the presentation of this action.

98.     Further, class certification is necessary because of the co-ownership of many of the building components require that Plaintiffs' claims be prosecuted together.

99.     Defendants have acted on grounds generally applicable to the Class. Class certification is appropriate under South Carolina law because Defendants engaged in a uniform and common practice. All Class Members have the same legal right to and interest in redress for damages associated with the defective conditions existing within 656 Coleman Townhomes.

100.     Plaintiff Nutley, **Plaintiff Horres** and the Class envision no unusual difficulty in the management of this action as a class action.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

101. Each Class Member has an interest of more than $100.00.

102. The relationship of the class claims with each other and with the Association claims makes piece meal litigation and individual claims difficult.

**ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

103. Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts. Upon information and belief, Defendants should have known 656 Coleman Townhomes was defectively constructed and failed to alert the Plaintiffs of 656 Coleman Townhomes' defective condition.

104. Defendants had a duty to inform Plaintiffs of the defects described herein, which they should have known. Notwithstanding their duty, Defendants never disclosed the defects to Plaintiffs.

105. Despite exercising reasonable diligence, Plaintiffs could not have discovered the defective condition of 656 Coleman Townhomes due to their latency.

106. Given Defendants' failure to disclose this non-public information about the defective nature of 656 Coleman Townhomes – information over which they had exclusive control – and because Plaintiffs could not reasonably have known of 656 Coleman Townhomes' defective nature, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

**ESTOPPEL FROM PLEADING WARRANTY OBLIGATION**

107. Defendants are also estopped from relying on any warranty obligation as a defense to Plaintiffs' claims.

108. By virtue of Defendants' acts, the work performed and/or materials supplied at 656 Coleman Townhomes have not lived up to Defendants' warranties and representations, and given

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

the defective condition of 656 Coleman Townhomes and the premature deterioration of the life expectancy of 656 Coleman Townhomes' building components that require unexpected maintenance, wear and/or replacement, the building components have not proven to be of value when compared to other building components.

109. Defendants, in the exercise of required diligence, which negligently failed to occur, should have known that 656 Coleman Townhomes was defective in design, construction and/or repair, and its building components were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiff and the Class. In fact, Defendants have previously seen other similar failures at other projects they have constructed.

110. Accordingly, any warranty provided by Defendants fails its essential purpose because its purports to warrant that 656 Coleman Townhomes and/or its building components will be free from defects for a limited period of time when in fact 656 Coleman Townhomes and/or its building components fail far short of the expected life cycle of the townhomes.

111. Moreover, Defendants' warranties are woefully inadequate to repair and replace failed building components, let alone reimburse for any damage suffered to the underlying structure. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

112. Moreover, given the comparative posture, resources, sophistication, and knowledge of the parties, the warranty limitations are procedurally unconscionable; and given Defendants knew or should have known that the defects existed at the time they issued the warranty, the limitations are substantively unconscionable.

113. As a result, any limitations on the remedies encompassed within Defendants'

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

warranties are unconscionable and unenforceable, and therefore, Defendants are estopped from relying on the same.

**ESTOPPEL FOR PLEADING NOTICE OF OPPORTUNITY TO CURE**

114. The Defendants are further estopped from relying on the Notice of Opportunity to Cure Act to stay the progression of Plaintiffs' claims.

115. Upon information and belief, one or more of the Defendants were put on sufficient notice of 656 Coleman Townhomes' defective condition within any statutory period prescribed by the Act.

116. Therefore, the Defendants were provided an opportunity to cure 656 Coleman Townhomes' defective condition previously, but failed to adequately perform.

**FOR A FIRST CAUSE OF ACTION**
**(Negligence/Gross Negligence as to All Defendants)**

117. Plaintiffs repeat and re-allege the allegations contained in the above paragraphs as if more fully set forth herein.

118. At all times relevant hereto, the Defendants, their agents, servants, employees, and subcontractors undertook and had a duty to Plaintiffs to exercise and use due care in the design, construction and repair of 656 Coleman Townhomes in a good workmanlike manner and with suitable materials, in accordance with the applicable building codes, state law, good design, and in conformance with the prevailing industry standards.

119. Defendants breached their duties to Plaintiff and the Class in a manner that was negligent, careless, reckless, grossly negligent, willful, and wanton in the following particulars:

(a) In failing to construct 656 Coleman Townhomes in accordance with building code, the plans and specifications, and good workmanship;
(b) In failing to properly supervise the work and construction of 656 Coleman Townhomes;
(c) In failing to properly coordinate the subcontractors;
(d) In failing to construct an adequate exterior building envelope;

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

(e) In failing to act as a reasonable person would in the circumstances then and there prevailing;
(f) In covering up their own defective work and the defective work of others;
(g) In failing to make proper repairs; and
(h) Such other failures to be proven at trial.

120. Plaintiffs have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, gross negligence, willfulness, and wantonness of the Defendants.

121. If it is shown that said failures were committed with gross negligence and/or reckless disregard for the rights of others, and/or constituted negligence *per se*, Plaintiffs are entitled to an award of punitive damages against the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**(Breach of Warranty as to all Defendants)**

122. Plaintiffs repeat and re-allege the allegations contained in the above paragraphs as if more fully set forth herein.

123. The design, construction, sale, and repair of 656 Coleman Townhomes came with implied warranties that the work would be performed in a careful, diligent and workmanlike manner and that 656 Coleman Townhomes would be constructed with suitable materials and components and free from all defects and be of superior quality befitting of an upscale condominium complex.

124. The design, construction, sale and/or repair of 656 Coleman Townhomes, and the components used therein, came with implied warranties of fitness, merchantability and workmanship and with a warranty of habitability.

125. Defendants have breached their warranties by constructing and/or repairing 656 Coleman Townhomes in a defective manner as set forth above.

126. As a direct and proximate result of the Defendants' breach of the implied warranty, Plaintiffs' have suffered actual and consequential damages.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**FOR A THIRD CAUSE OF ACTION**

**(Strict Liability in Tort: *S.C. Code Ann.* §§ 15-73-10, *et seq.* as to Atlantic Construction Services, Inc.; Buck Lumber and Building Supply, Inc.; Builders FirstSource, Inc.; Builders FirstSource-Atlantic Group, LLC; Builders FirstSource-Florida, LLC a/k/a Builders FirstSource-Florida Design Center, LLC; Builders FirstSource-Southeast Group, LLC; New Horizon Shutters, Inc. a/k/a New Horizon Shutters International, LLC; Standard Precast Walls, LLC; and Speedtruss, Inc.)**

127. Plaintiffs repeat and re-allege the allegations contained in the above paragraphs if more fully set forth herein.

128. In manufacturing and supplying products for the construction of the 656 Coleman Townhomes, **Atlantic Construction Services, Inc.; Buck Lumber and Building Supply, Inc.; Builders FirstSource, Inc.; Builders FirstSource-Atlantic Group, LLC; Builders FirstSource-Florida, LLC a/k/a Builders FirstSource-Florida Design Center, LLC; Builders FirstSource-Southeast Group, LLC; New Horizon Shutters, Inc. a/k/a New Horizon Shutters International, LLC; Standard Precast Walls, LLC; and Speedtruss, Inc.**, placed products into the stream of commerce.

129. By introducing their products into the stream of commerce, these Defendants represented said products were safe and suitable for their foreseeable use.

130. In the manufacture and supply of products to the 656 Coleman Townhomes, these Defendants, anticipated and expected that their products would reach the public in substantially the same condition in which they were designed, developed, constructed, and sold.

131. These Defendants, have supplied and manufactured their products in a defective manner unreasonably dangerous to persons or property other than the products themselves, which has resulted in repeated water intrusion into and damage to the 656 Coleman townhomes and other building deficiencies.

132. Plaintiffs could not have discovered the product defects through the exercise of reasonable care.

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

133. The cost of altering the design, construction, and/or repair of the products supplied to the 656 Coleman Townhomes was substantially less than the resulting damage, cost, and injury suffered by the Plaintiffs.

134. The design and manufacture of the products supplied to the 656 Coleman Townhomes was inherently defective as sold was a direct and proximate cause of the damages suffered by Plaintiffs.

135. These Defendants, are therefore liable to Plaintiffs under the doctrine of strict liability in an amount to be determined by the trier of fact.

WHEREFORE, Plaintiffs demand a trial by jury and pray for:

1. a judgment against the Defendants that supplied labor and/or materials to the Winsor South Buildings, joint and several;
2. a judgment against the Defendants that supplied labor and/or materials to the Ryland Buildings, joint and several;
3. actual and consequential damages;
4. punitive damages;
5. reasonable attorneys' fees;
6. costs of suit;
7. prejudgment interest;
8. such further relief as the Court deems just and proper.

Respectfully submitted,

JUSTIN O'TOOLE LUCEY, P.A.

By: ______________________

Justin O'Toole Lucey
Joshua F. Evans
James L. Floyd, III ("Lee")

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

Collin H. Fuller
415 Mill Street
Post Office Box 806
Mount Pleasant, SC 29465-0806
(843) 849-8400 phone
(843) 849-8406 fax
jlucey@lucey-law.com
jevans@lucey-law.com
lfloyd@lucey-law.com
cfuller@lucey-law.com

January 7, 2019
Charleston, South Carolina

2016-CP-10-3455

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

## CERTIFICATE OF SERVICE

I, Lee Weiland, an employee of the law offices of Justin O'Toole Lucey, P.A., attorney for the Plaintiffs, hereby certifies that on January 7, 2019, I have served the below-listed counsel and parties in this action with a copy of the foregoing by mailing and/or emailing a copy of same to the following address:

Stephen L. Brown, Esquire
Catherine H. Chase, Esquire
Young Clement Rivers, LLP
P.O. Box 993
Charleston, SC 29402
sbrown@ycrlaw.com
cchase@ycrlaw.com
***Attorneys for Winsor South, LLC and Jeffrey M. Thomas***

Mark A. Mason. Esquire
The Mason Law Firm, P.A.
Tidewatch Centre on Shem Creek
465 W. Coleman Boulevard, Suite 302
Mount Pleasant, SC 29464
mark@masonlawfirm.com
***Attorneys for the Southeastern Recapitalization Group, LLC and WCM Construction, LLC***

Alan R. Belcher, Jr., Esquire
Derek Newberry, Esquire
Hall Booth Smith, PC
111 Coleman Blvd., Suite 301
Mt. Pleasant, SC 29464
abelcher@hallboothsmith.com
dnewberry@hallboothsmith.com
***Attorneys for Guaranteed Framing, LLC***

Ian W. Freeman, Esquire
Walker Gressette, Freeman, & Linton
PO Box 22167
Charleston, SC 29413
freeman@wgfllaw.com
***Attorney for Screens Plus, Inc.***

FILED
2019 JAN -9 AM 11:05
JULIE J. ARMSTRONG
CLERK OF COURT
BY

Kevin W. Mims, Esquire
Ran C. Stoney, III, Esquire
Luzuriaga Mims, LLP
50 Immigration Street, Suite 200
Charleston, SC 29403
kmims@lmlawllp.com
rstoney@lmlawllp.com
***Attorneys for Simons Constructions Company, LLC***

Michelle Endemann, Esq.
Jeffrey Crudup, Esquire
Clarkson, Walsh, & Coulter, PA
1233 Ben Sawyer Blvd., Ste. 900
PO Box 2219
Mt. Pleasant, SC 29465
jcrudup@clarksonwalsh.com
mendemann@clarksonwalsh.com
***Attorney for New Horizon Shutters, Inc. a/k/a New Horizon Shutters International, LLC***

Allen Leland DuPre, Esquire
Lee Ann Walters, Esquire
Lyles & Lyles, LLC
342 East Bay Street
Charleston, SC 29401
ald@lylesfirm.com
lw@lylesfirm.com
***Attorney for Buck Lumber & Building Supply, Inc.***

Saunders M. Bridges, Jr., Esquire
Aiken Bridges Elliott Tyler & Saleeby, PA
PO Drawer 1931
Florence, SC 29503-1931
smbjr@aikenbridges.com
***Attorney for Atlantic Construction Services, Inc.***

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

John E. Rogers, II, Esquire
C. Reed Teague, Esquire
Ginger Goforth, Esquire
The Ward Law Firm, P.A.
P.O. Box 5663
Spartanburg, SC 29304
jrogers@wardfirm.com
rteague@wardfirm.com
cgraham@wardfirm.com
***Attorneys for Land/Site Services, Inc. and J. Mora Brick & Block Mason, LLC***

Robert B. Hawk, Esquire
R. Michael Ethridge, Esquire
Ethridge Law Group, LLC
P.O. Box 20969
Charleston, SC 29413
rhawk@ethridgelawgroup.com
mhemingway@ethridgelawgroup.com
***Attorneys for Stucco By Design, LLC*** and ***PJ Sanchez Masonry, LLC***

David A. Anderson, Esquire
James B. Robey, III, Esquire
Richardson Plowden & Robinson, PA
P.O. Drawer 7788
Columbia, SC 29202
danderson@richardsonplowden.com
jrobey@richardsonplowden.com
-and-
Joshua D. Shaw, Esquire
Soroush Moghaddassi, Esq.
1301 Gervais Street, Suite 1900
Columbia, SC 29202
jshaw@hedrickgardner.com
smoghaddassi@hedrickgardner.com
***Attorneys for Stucco By Design, LLC***

Everett A. Kendall, II, Esquire
Richard E. McLawhorn, Jr., Esquire
Sweeny, Wingate & Barrow, PA
PO Box 12129
Columbia, SC 29211
eak@swblaw.com
rem@swblaw.com
***Attorneys for Fogel Services, Inc.***

Bachman S. Smith, IV, Esquire
Haynsworth Sinkler Boyd, PA
P.O. Box 340
Charleston, SC 29402
bsmithiv@hsblawfirm.com
***Attorney for G&S Home Remodeling, LLC***

Brent M. Boyd, Esquire
Murphy & Grantland, PA
P.O. Box 6648
Columbia, SC 29260
bboyd@murphygrantland.com
***Attorney for Diria Tawi Painting, Inc.***

Stephen P. Hughes, Esquire
Howell Gibson and Hughes
P.O. Box 40
Beaufort, SC 29901
sphughes@hghpa.com
***Attorney for Builders FirstSource, Inc.; Builders FirstSource – Atlantic Group, LLC; Builders FirstSource – Florida, LLC; and Builders FirstSource – Southeast Group, LLC***

Danielle F. Payne, Esquire
McAngus Goudelock and Courie
735 Johnnie Dodds Blvd., Suite 200
Mount Pleasant, SC 29464
danielle.payne@mgclaw.com
-and-
S. Markey Stubbs, Esquire
Baker, Ravenel & Bender, L.L.P.
P.O. Box 8057
Columbia, SC 29202
***Attorneys for AC Heating and Air Conditioning Service, Inc.***

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Ian W. Freeman, Esq.
P.O. Drawer 22167
Charleston, SC 29413-2216
freeman@wgflaw.com
***Attorneys for Hurley Services, LLC***

Patrick T. Morrissey, Esquire
Clawson & Staubes, LLC
126 Seven Farms Drive, Suite 200
Charleston, SC 29492-8144
pmorrissey@clawsonandstaubes.com
***Attorneys for Lutzen Construction, Inc.*** and ***San Luis Construction, Inc. n/k/a Roofing America Metal Fabrications, LLC***

Clark W. DuBose, Esquire
Haynsworth Sinkler Boyd, PA
1201 Main Street, 22nd Floor
P.O. Box 11889 (29211)
Columbia, SC 29201
cdubose@hsblawfirm.com
***Attorney for Javier Morales Merino***

John A. "Jay" Jones, Esquire
Paige C. Ornduff, Esquire
Gallivan White & Boyd, PA
P.O. Box 22768
Charleston, SC 29413-2768
jjones@gwblawfirm.com
pcornduff@gwblawfirm.com
***Attorney for East Coast Wall Systems, Inc.***

Neil S. Haldrup, Esquire
Wall Templeton & Haldrup, P.A.
145 King Street, Suite 300
Charleston, SC 29401
neil.haldrup@walltempleton.com
-and-
L. Dean Best, Esquire
Best Honeycutt, P.A.
PO Box 13466
8 Sawgrass Road, Suite A (29412)
Charleston, SC 29422
dean@besthoneycutt.com
Telephone: 843-793-4744; 843-793-4278
dean@besthoneycutt.com
***Attorneys for Alpha Omega Construction Group, Inc.***

O. Carlisle Edwards, Jr., Esquire
McAngus Goudelock & Courie, LLC
735 Johnnie Dodds Blvd., Suite 200
Mount Pleasant, SC 29465
cedwards@mgclaw.com
***Attorney for Charlotte Flooring, Inc.***

G. Troy Thames, Esquire
Willson Jones Carter & Baxley, P.A.
421 Wando Park Blvd., Suite 100
Mount Pleasant, SC 29464
tthames@wjlaw.net
***Attorney for RB's Trim***

Christine C. Varnado, Esquire
The Seibels Law Firm, P.A.
38 Broad Street, Suite 200
Charleston, SC 29401
cvarnado@seibelsfirm.com
***Attorney for Sharon's Painting and Construction a/k/a Sharon's Painting, LLC***

Thomas F. Dougall, Esquire
Michal Kalwajtys, Esquire
Dougall & Collins
1700 Woodcreek Farms Road
Elgin, SC 29045
tdougall@dougallfirm.com
mkalwajtys@dougallfirm.com
***Attorneys for Cohen's Drywall, Inc.***

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Jonathan J. Anderson, Esquire
Curtis B. Martin, Esquire
Anderson Reynolds & Stephens, LLC
37 ½ Broad Street
PO Box 87
Charleston, SC 29401
janderson@arslawsc.com
cmartin@arslawsc.com
***Attorneys for Cahill Contracting, LLC***

William J. Horvath, Esquire
Turner Padget Graham & Laney P.A.
40 Calhoun Street, Suite 200 (29401)
PO Box 22129
Charleston, South Carolina 29413
whorvath@turnerpadget.com
***Attorneys for Electrical Design & Construction, Inc.***

S. Markey Stubbs, Esquire
Baker, Ravenel & Bender, L.L.P.
3710 Landmark Drive, Suite 400
Post Office Box 8057
Columbia, South Carolina 29202
mstubbs@brblegal.com
***Attorney for DVS, Inc.***

Caroline C. McIntosh, Esquire
Timothy C. Dargan, Esquire
Luzuriaga Mims, LLP
50 Immigration Street, Suite 200
Charleston, SC 29403
cmcintosh@lmlawllp.com
tdargan@lmlawllp.com
***Attorneys for Fine Builders, LLC***

Sarah L. Fragale, Esquire
Turner Padget Graham & Laney P.A.
40 Calhoun Street, Suite 200 (29401)
PO Box 22129
Charleston, SC 29413
sfragale@turnerpadget.com
-and-
F. Heyward Grimball, Esquire
James Elliott, Esq.
Richardson, Plowden & Robinson, PA
171 Church St, Suite 150
Charleston, SC 29401
fhgrimball@richardsonplowden.com
JElliott@RichardsonPlowden.com
***Attorneys for Bob Porter d/b/a Custom Interior Construction***

Danielle F. Payne, Esquire
McAngus Goudelock & Courie, L.L.C.
PO Box 650007
735 Johnnie Dodds Blvd, Suite 200 (29464)
Mt. Pleasant, SC 29465
danielle.payne@mgclaw.com

Patrick J. McDonald, Esq.
Resnick & Louis, P.C.
234 Seven Farms Drive, Suite 128
Charleston, SC 29492
pmcdonald@rlattorneys.com
***Attorneys for Advance Plumbing Heating & Air, Inc.***

C. Clay Olson, Esquire
Harper Whitwell PLLC
164 Meeting Street, Suite 139
Charleston, SC 29401
clay@harperwhitwell.com
***Attorney for Charleston Exteriors, LLC***

Thomas F. Dougall, Esquire
William A. Collins, Jr., Esquire
Michal Kalwajtys, Esquire
Dougall & Collins
1700 Woodcreek Farms Road, Suite 100
Elgin, SC 29045
wcollins@dougallfirm.com
mkalwajtys@dougallfirm.com
***Attorneys for Timothy Mitchell***

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

Paul R. Rahn, Esquire
Jillian S. Barton, Esquire
Robertson, Hollingsworth, Manos & Rahn
550 King Street, Suite 300
Charleston, SC 29403
prr@roblaw.net
jsb@roblaw.net
-AND-
James D. Smith, Jr., Esquire
McAngus, Goudelock & Courie, LLC
735 Johnnie Dodds Blvd, Suite 200
Mount Pleasant, SC 29465
843-576-2904
jsmith@mgclaw.com
***Attorneys for Landmark Construction Co., Inc.***

Shanna Milcetich Stephens, Esq.
Thomas F. Drazan, Esq.
37 ½ Broad Street (29401)
P.O. Box 87
Charleston, SC 29402
sstephens@arslawsc.com
tdrazan@arslawsc.com
***Attorneys for MJG Construction, Inc.***

Kevin W. Mims, Esquire
Randell C. Stoney, III, Esquire
Luzuriaga Mims, LLP
50 Immigration Street, Suite 200
Charleston, SC 29403
kmims@lmlawllp.com
rstoney@lmlawllp.com
***Attorneys for Simons Construction Company, LLC***

Robert B. Hawk, Esq.
Andrew R. De Holl, Esq.
Ethridge Law Group
P.O. Box 20969
Charleston, South Carolina 29413
rhawk@ethridgelawgroup.com
adeholl@ethridgelawgroup.com
***Attorneys for Jorge Diaz a/k/a Jorge Louis Diaz Paz***

Karl S. Brehmer
1720 Main Street, Suite 201
Post Office Box 7966
Columbia, SC 29202
(803) 771-6600
ksb@brownandbrehmer.com
-and-
Christopher M. Adams, Esquire
Collins and Lacy, P.C.
P.O. Box 12487
Columbia, SC 29202
cadams@collinsandlacy.com
***Attorneys for Horacio Jasso***

M. Shanter Chaparro, Esq.
Best Honeycutt, P.A.
PO Box 13466
102 Wappoo Creek Drive
Suite 8 (29412)
Charleston, SC 29422
shanter@besthoneycutt.com
***Attorneys for Miguel Painting, LLC***

David S. Cobb, Esq.
Turner Padget Graham & Laney P.A.
40 Calhoun Street
Suite 201
Charleston, SC 29401
dcobb@turnerpadget.com
***Attorneys for Standard Pre-Cast LLC and Novac Construction, Inc.***

Claude T. Prevost, III, Esq.
Charles A. Kinney, Esq.
PO Box 12487
Columbia, SC 29211
cprevost@collinsandlacy.com
***Attorneys for Fabio de Oliviera d/b/a Four Season Siding and Sunrise Siding, LLC***

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

Andrew N. Cole, Esq.
James L. Williams, Esq.
Collins & Lacy, PC
PO Box 12487
Columbia, SC 29211
acole@collinsandlacy.com
jwilliams@collinsandlacy.com
***Attorneys for Espino Roofing***

Laura Paton, Esquire
Alexander Davis, Esquire
Carlock Copeland
40 Calhoun Street, Suite 400
Charleston, SC 29401
lpaton@carlockcopeland.com
adavis@carlockcopeland.com
***Attorneys for AS Construction***

By: *Lee Weiland*
Lee Weiland

Charleston, South Carolina

ELECTRONICALLY FILED - 2019 Dec 30 4:12 PM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# JUSTIN O'TOOLE LUCEY, PA

*Attorneys at Law*

415 Mill Street, Mount Pleasant, SC 29464
*Reply to:* P.O. Box 806, Mount Pleasant, SC 29465
Phone: 843.849.8400 · Fax: 843.849.8406 · office@lucey-law.com

Justin Lucey
Joshua F. Evans
Stephanie D. Drawdy
Dabny Lynn
James L. Floyd, III

Anna S. McCann
Lauren M. Milton
Taylor M. Morris
Sohayla R. Townes
Collin H. Fuller

January 7, 2019

**VIA U.S. MAIL**
The Honorable Julie J. Armstrong
Charleston County Clerk of Court
100 Broad Street, Suite 106
Charleston, SC 29401

**Re:** ***Six Fifty Six Owners Association, Inc., et al. v. Winsor South, LLC, et al.***
**Case No.: 2016-CP-10-3455**

Dear Ms. Armstrong:

Please find enclosed for filing the one (1) original and one (1) copy of **Plaintiffs' Third Amended Summons and Third Amended Complaint** in the above-referenced matter. Please forward these documents to the appropriate person for filing, and return a file-stamped copy in the enclosed, self-addressed envelope.

Please feel free to contact me should you have any questions or concerns regarding this matter. Thank you in advance for your attention to this request.

Sincerely,

Lee Weiland

Lee Weiland
Paralegal to James L. Floyd, III ("Lee")

Enclosures (as stated)
cc: All parties of record

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO.: 2019-CP-10-6671 |
| | ) | |
| Builders FirstSource - Southeast Group, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **AFFIDAVIT OF SERVICE VIA CERTIFIED MAIL** |
| vs. | ) | |
| | ) | |
| Arch Specialty Insurance Company and Western World Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |

The below individual hereby states that she is employed with the law firm of Simons & Dean located at 147 Wappoo Creek Drive, Charleston, South Carolina 29412.

She further states that the Defendant Western World Insurance Company, by and through its legal agency the South Carolina Department of Insurance, was properly served via certified mail, return receipt, restricted delivery on January 8, 2020 with the Summons and Complaint filed in this matter and Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Requests for Production as evidenced by the Return Receipt from the United States Post Office attached hereto as Exhibit A along with the South Carolina Department of Insurance's letter to Defendant Western World Insurance Company informing them of its acceptance of service attached hereto as Exhibit B. Said service was performed in accordance with the South Carolina Rules of Civil Procedure.

FURTHER AFFIANT SAYETH NOT.

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

Brenda D. Casey
Paralegal to Keating L. Simons, III

SWORN to and subscribed before me
this 14 day of January, 2020.

Notary Public for South Carolina
Printed Name of Notary: Emily Clark
My Commission Expires: February 3, 2026

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Director of the Department of Insurance
1201 Main Street, Suite 1000
Columbia, SC 29201

9590 9403 0675 5196 0501 86

2. Article Number *(Transfer from service label)*

7015 1520 0003 0691 7306

***COMPLETE THIS SECTION ON DELIVERY***

A. Signature

X [signature]

☐ Agent
☐ Addressee

B. Received by *(Printed Name)* TERI ABEL

C. Date of Delivery 01-8-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☒ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053

Domestic Return Receipt

**EXHIBIT A**



# South Carolina Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

HENRY McMASTER
Governor

RAYMOND G. FARMER
Director

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

January 9, 2020

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
WESTERN WORLD INSURANCE COMPANY
400 PARSON'S POND DRIVE
FRANKLIN LAKES, NJ 07417-2600

Dear Sir:

On January 8, 2020, I accepted service of the attached Summons, Complaint, Interrogatories and Request for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov**. When replying, please refer to File Number 177558, Builders FirstSource - Southeast Group, LLC v. WESTERN WORLD INSURANCE COMPANY, *et al.*, 2019-CP-10-6671.

By:

David E. Belton
Senior Associate General Counsel
(803)737-6200

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC: Keating L. Simons III
147 Wappoo Creek Drive, Suite 604
Charleston, SC 29412

**EXHIBIT B**

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF CHARLESTON<br><br>Builders FirstSource - Southeast Group, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Arch Specialty Insurance Company and Western World Insurance Company,<br><br>Defendants. | IN THE COURT OF COMMON PLEAS<br>FOR THE NINTH JUDICIAL CIRCUIT<br>CASE NO.: 2019-CP-10-6671<br><br>**AFFIDAVIT OF SERVICE VIA CERTIFIED MAIL** |

The below individual hereby states that she is employed with the law firm of Simons & Dean located at 147 Wappoo Creek Drive, Charleston, South Carolina 29412.

She further states that the Defendant Arch Specialty Insurance Company, by and through its legal agency the South Carolina Department of Insurance, was properly served via certified mail, return receipt, restricted delivery on January 8, 2020 with the Summons and Complaint filed in this matter and Plaintiff's First Set of Interrogatories and Plaintiff's First Set of Requests for Production as evidenced by the Return Receipt from the United States Post Office attached hereto as Exhibit A along with the South Carolina Department of Insurance's letter to Defendant Arch Specialty Insurance Company informing them of its acceptance of service attached hereto as Exhibit B. Said service was performed in accordance with the South Carolina Rules of Civil Procedure.

FURTHER AFFIANT SAYETH NOT.

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

Brenda D. Casey
Paralegal to Keating L. Simons, III

SWORN to and subscribed before me
this 14 day of January, 2020.

Notary Public for South Carolina
Printed Name of Notary: Emily Clark
My Commission Expires: February 3, 2026

ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP1006671

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Director of the Department of Insurance
1201 Main Street, Suite 1000
Columbia, SC 29201

9590 9403 0675 5196 0501 86

2. Article Number *(Transfer from service label)*

7015 1520 0003 0691 7306

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by *(Printed Name)* TERI ABEL

C. Date of Delivery 01-8-20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☒ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053 Domestic Return Receipt

**EXHIBIT A**



ELECTRONICALLY FILED - 2020 Jan 17 9:18 AM - CHARLESTON - COMMON PLEAS - CASE#2019CP100671

# South Carolina Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105
Telephone: (803) 737-6160

**HENRY McMASTER**
Governor

**RAYMOND G. FARMER**
Director

January 9, 2020

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ARCH SPECIALTY INSURANCE COMPANY
c/o Corporation Service Company
1703 Laurel Street
Columbia, SC 29201-0000

Dear Sir:

On January 8, 2020, I accepted service of the attached Summons, Complaint, Interrogatories and Request for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to sdubois@doi.sc.gov**. When replying, please refer to File Number 177557, Builders FirstSource - Southeast Group, LLC v. ARCH SPECIALTY INSURANCE COMPANY, *et al.*, 2019-CP-10-6671.

By:

David E. Belton
Senior Associate General Counsel
(803)737-6200

Sincerely Yours,

Raymond G. Farmer
Director
State of South Carolina
Department of Insurance

Attachment

CC: Keating L. Simons III
147 Wappoo Creek Drive, Suite 604
Charleston, SC 29412

**EXHIBIT B**